JOSÉ A. GONZÁLEZ ET AL., demandantes y recurridos, *v.* CENTEX CONSTRUCTION CO. OF PUERTO RICO, INC., ET AL., demandados y recurrentes.

*Número:* R-71-106    *Resuelto:* 3 de diciembre de 1974

*J. M. Calderón García, William J. Riefkohl, J. R. Calderón Cerecedo, Francisco Alonso Rivera* y *Orlin P. Goble,* abogados de los recurrentes; *Plinio Pérez Marrero, R. Elfrén Bernier* y *Hjalmar Y. Flax,* abogados de los recurridos.

PER CURIAM: El 13 de junio de 1966 los recurridos, los esposos González, adquirieron de la recurrente Centex una vivienda en la Urbanización Villa Carolina. La misma adolecía de distintos defectos. El empañetado interior y el exterior

no formaban una superficie lisa; los lomos resultantes eran de tal naturaleza que al colocarse una vara entre la parte inferior y superior de una pared la separación resultante montaba a casi dos pies. (T.E. pág. 13.) El balcón del segundo piso quedó unas dos pulgadas más alto que el resto del piso de la casa, con la consecuencia de que cuando llovía entraba el agua al segundo piso y, por las escaleras, al primero. Los gabinetes de cocina tenían un laminado de formica colocado en pedazos, separados los unos de los otros; las gavetas no abrían bien. El centro de las puertas interiores y exteriores era de cartón y éstas se habían deteriorado notablemente. La instalación eléctrica estaba en malas condiciones. (T.E. págs. 11–15; 64–65.)

Antes de firmarse la escritura de adquisición los compradores no tuvieron oportunidad, por insistencia de las vendedoras recurrentes de que se otorgase inmediatamente el contrato, de inspeccionar la casa (Determinación de Hecho Núm. 2 del Tribunal Superior). Al advertirlos se comunicaron con diversos funcionarios de Centex, cuyo vicepresidente, por carta de 1 de julio de 1966, comprometió a la empresa vendedora a "intentar corregir cualesquiera defectos que puedan existir en la casa comprada por usted en Villa Carolina. . ." (traducción nuestra; Exhibit 1 de la parte demandante).

Se incumplió la promesa. El señor González hizo alrededor de veinte visitas al vicepresidente de Centex y acudió de ocho a diez veces a las oficinas de los abogados de ésta. Resultaron infructuosas sus gestiones (D. de H. Núm. 6).

Los esposos González nunca habitaron la casa, aunque no existe base en el récord para concluir que ésa fue su intención original. Poco después de adquirir la propiedad, un hijo de ellos, recién casado, se mudó a la misma, en la que vivieron por corto tiempo, dadas sus condiciones. Luego el señor González pensó alquilar la casa pero ante el temor de las consecuencias de una demanda por daños y perjuicios optó por no hacerlo. (D. de H. Núm. 5.) Para este período su esposa sufrió desgraciadamente una caída. Incurrió el matrimonio

en gastos extraordinarios, mermaron marcadamente sus ingresos y al cabo perdieron la vivienda al ejecutársela la Housing Investment Corporation. Al momento de dictarse sentencia la casa no pertenecía a los demandantes (*loc. cit.*)

El juicio se celebró el 20 de octubre de 1970. Testificaron a favor de la parte demandante el señor González y un ingeniero. La parte demandada no presentó prueba. El tribunal de instancia declaró con lugar la demanda, ordenando el pago a la parte demandante de la suma de $7,206.00, más $500 por concepto de honorarios de abogado y las costas del proceso. Seis mil dólares de esta cantidad correspondían, conforme el tribunal, a la reparación de los defectos de la vivienda; trescientos dólares por razón de daños morales; y el resto representaba el pronto pago, los gastos iniciales de cierre y el monto del primer plazo de renta. El precio de compra de la casa fue de cerca de catorce mil dólares. (T.E. pág. 35.)

Las vendedoras recurrentes le imputan la comisión de cuatro errores al tribunal de instancia: la imposición de responsabilidad a las vendedoras por vicios que no eran ocultos, sino manifiestos; la concesión de $6,000 a los compradores para la reparación de una casa que no les pertenecía ya; el reconocimiento de $300 de daños por angustias mentales; y la concesión de $7,206.00 por los daños totales cuando alegadamente no se estableció su ocurrencia ni que se debiesen a actos de las vendedoras. Los discutiremos todos, pero en el orden que dictan los principios que debemos resumir en esta opinión.

██ En primer término, importa recalcar que estos casos de ventas de viviendas defectuosas no tienen que enmarcarse necesariamente dentro de los postulados que sientan los Arts. 1373 al 1375 de nuestro Código Civil, 31 L.P.R.A. secs. 3841–3843, relativos básicamente a la acción redhibitoria y a la estimatoria o *quanti minoris*. Los compradores tienen en estos casos una serie de causas a su disposición, cada cual con sus propios preceptos y principios. Dependiendo de las circunstancias, puede acudirse, entre otras, a la acción decenal a que

alude al Art. 1483 de nuestro Código Civil, 31 L.P.R.A. sec. 4124; a la que fluye de la culpa aquiliana; a la rescisoria por error, dolo o lesión; y a las que deriven de la violación de obligaciones contractuales. El análisis de cada caso depende naturalmente de las figuras jurídicas en juego. La disponibilidad de tal variedad de causas no significa que pueda recobrarse bajo varias de ellas. *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28 (1967). No existe razón para no alzar en tales circunstancias la barrera de la doctrina del enriquecimiento injusto. *Compañía Popular* v. *Corte*, 63 D.P.R. 121 (1944); *Silva* v. *Comisión Industrial*, 91 D.P.R. 891 (1965). Del otro lado, el título que las partes o el tribunal de instancia le impongan a la acción, aunque de importancia, no es decisivo necesariamente. No vivimos los rigores del antiguo derecho procesal inglés.

En el caso de autos, ni las alegaciones ni la prueba se encierran en estrecho cuadro jurídico que constriñan la acción de efectuar justicia entre las partes. Puede examinarse la situación desde varias vertientes, aunque debe reconocerse desde el principio la inaplicabilidad de ciertas causas. Podemos descartar, por ejemplo, la acción contractual contra la vendedora fundada en la garantía que la Administración Federal de Hogares exige al contratista de un edificio. Dicha garantía le asegura al comprador que la vivienda se construyó sin sustancial divergencia de los planos y especificaciones. La prueba en este caso no se encaminó fundamentalmente a establecer este hecho o su presunción respecto a los distintos defectos señalados.

La naturaleza de la prueba constituye, en efecto el factor de mayor peso, aunque para aquilatarla es preciso en ocasiones determinar la intención del demandante. Veamos de nuevo, a la luz de estos factores, la configuración de esta causa.

La redacción de la demanda no se hace en términos de la acción estimatoria. Faltan elementos, en la demanda o en la prueba, de varias otras acciones.

Lo que la prueba establece básicamente es una causa de acción contractual bajo la garantía que Centex les dio a los compradores de corregir los defectos señalados dentro de un plazo razonable. La demanda está redactada en términos suficientemente amplios para sostener dicha conclusión y, aun de no haberlo estado, se entendería naturalmente enmendada a tal efecto.

■ Examinemos ahora los errores. Las vendedoras recurrentes no tienen razón al aducir que la sentencia es errónea porque los vicios o defectos mencionados eran manifiestos. Ellos se comprometieron a corregirlos e incumplieron su promesa. Aun si se tratase de una acción estimatoria, la negativa de las recurrentes a permitirles a los compradores examinar la vivienda antes de firmar la escritura de adquisición impediría la utilización de dicho argumento.

■ Tampoco procede la impugnación de los daños morales concedidos. Son recobrables estos daños en este tipo de causa, *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 56–60 (1967), y el hecho de que los compradores no habitaran la casa no altera esta conclusión. Ellos sufrieron el hecho de presenciar la mudanza forzada de su hijo recién casado. Ellos se vieron impedidos, cuando un acto fortuito mermó sus ingresos, de mudarse a una vivienda más económica. Ellos vivieron la obstinada desidia de las vendedoras en corregir los defectos.

■ Respecto al error referente a la concesión a los compradores de la cantidad de $6,000.00 para reparar una casa que no era ya de su propiedad, consideramos que se cometió el error. No se trata aquí de una situación como la de *Boyd* v. *Tribunal Superior*, 101 D.P.R. 651 (1973), en que se le reembolsa a un comprador, quien ya había vendido su casa, la cantidad que pagó en exceso originalmente, deduciéndose la ganancia efectuada en la venta hecha por él. En el caso de autos, por causas ajenas a los vendedores, los compradores permitieron que se les ejecutase la vivienda. Los nuevos adqui-

rientes de la vivienda, de no repararse los defectos, pueden incoar la acción decenal, entre algunas otras, contra Centex. Se expone en tales circunstancias al contratista a desembolsar dos veces el costo de las reparaciones. *Pereira,* supra, 34–45. No hallamos tampoco base en ley dentro del contexto de este caso para concederle al comprador de una casa que ya no le pertenece dinero para repararla.

Esto no significa, sin embargo, que los compradores en la situación singular de este caso quedan huérfanos de protección. El Art. 1060 de nuestro Código Civil, 31 L.P.R.A. sec. 3024, expresa, al referirse a los daños y perjuicios recobrables por la violación de obligaciones contractuales que: "Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. . . ." De la prueba desfilada surge que el valor rentable de la casa en 1966 era de ciento veinticinco dólares mensuales, de haberse hallado ésta libre de defectos (T.E. pág. 19), y hubo evidencia de que alguien interesaba alquilarla por dicha cantidad. Era perfectamente previsible en una situación como la de autos que los compradores, quienes poseían por catorce años su propia vivienda, intentasen alquilar la nueva. Deben los vendedores responderles por tanto a los compradores por la diferencia entre el valor rentable de la casa y los pagos hipotecarios a efectuarse. Dicha diferencia monta a treinta y tres dólares mensuales y se eleva en el período de tres años y diez meses que los compradores poseyeron la casa a la cantidad de $1,518.00. Aparte de la cuestión de su aplicabilidad o no, la prueba no justifica el criterio de *Boyd* u otros análogos para precisar la medida de estos daños.

Por los fundamentos expuestos *se modificará la sentencia del tribunal de instancia para concederles a los compradores, en vez de los $7,206.00 originales, la suma total de $2,968.00, más intereses a partir de la fecha de la demanda, $500.00 por concepto de honorarios de abogado y las costas del proceso.*

*Dicha suma de $2,968.00 se compone de los $1,518.00 por razón de los daños últimamente citados, a los que deben sumarse los $200.00 desembolsados al perito ingeniero que testificó en la vista; $300.00 por concepto de daños morales; y $950.00 (T.E. pág. 51) como reembolso de la inversión efectuada. Así modificada, se confirmará la sentencia.*