# 96 DTA 94

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE ARECIBO Y UTUADO

RUBEN SANCHEZ RIVERA, HELEN MALAVE
Y LA SOC. DE GAN. CONSTITUIDA POR ELLOS
Demandantes-Apelantes

v.

JUAN A. SAN MIGUEL CORP., JUAN A. SAN MIGUEL SANTOS, SU PRESIDENTE Y EN SU
CAPACIDAD PERSONAL, DOÑA FULANA DE TAL, SU ESPOSA, Y LA SOCIEDAD DE
BIENES GANANCIALES, ETC.
Demandados-Apelados

Núm. KLAN-96-00089

San Juan, Puerto Rico, a 19 de abril de 1996

Panel integrado por su presidente, Juez Arbona Lago
y los Jueces Giménez Muñoz y Salas Soler

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Luego de dictar sentencia en resarcimiento por vicios de construcción que causaron la ruina de una vivienda, en reconsideración Instancia eliminó del dictamen las partidas correspondientes a los daños estructurales y pintura por entender que el Artículo 1483 del C. C. 1930, 31 L.P.R.A. 4124, priva de legitimación activa al titular dominical del inmueble ruinoso si al momento de sentencia ya no es dueño. Al así actuar en reconsideración, Instancia erró y corresponde revocar, para reinstalar la sentencia original.

### I

Mediante Sentencia de 9 de junio de 1994, notificado su archivo en autos el 5 de julio de 1994, en la causa CAC-90-164(401) ante el entonces Tribunal Superior, Sala de Arecibo (Hon. Olivette Sagebien, J.), se dictó sentencia por la suma total de $15,000 más $2,000 para honorarios de abogados

a favor de los demandantes-recurrentes y en contra de Juan San Miguel, Inc.. La partida de $15,000 se desglosa en $10,500 para arreglos estructurales, $1,500 para pintura y $3,000 en quántum reparado de daño emocional sufrido por la co-demandante, Sra. Hele Malavé.

Conforme al dictamen, el 21 de agosto de 1980 la sociedad de gananciales del demandante había adquirido de la corporación demandada una vivienda construida en bloques de hormigón concreto, de 3 cuartos, sala, comedor, cocina, baño, marquesina y *"laundry"*, sita en el Barrio Morovis Sur, en el Municipio de Morovis. La vivienda fue financiada por Farmer's Home Administration. Dentro del término decenal del Art. 1483, 3 L.P.R.A. 4124, se instó el pleito. Quedaron probados los daño y se dictó sentencia contra Juan San Miguel, Inc. en compensación por ruina. El Tribunal concluyó de la siguiente manera, a las páginas 2 y 3 de su sentencia:

*"3. Pasados dos (2) años de habitar en la casa de marras, los señores Sánchez se percataron de que el estucado del techo se caía continuamente. Posteriormente, notaron también que el cemento del techo de la casa se caía en pedazos y, cuando llovía, el agua salía por los receptáculos de electricidad. Aparecieron grietas en el cemento. En varias ocasiones trataron de comunicarse con el Ing. San Miguel para arreglar la situación sin éxito alguno. En los alrededores de 1985, los señores Sánchez tuvieron que mudarse a casa de unos familiares por entender que la estructura era una amenaza a la seguridad física de sus hijos y de la familia. En julio de 1991, la familia se trasladó al estado de Florida, E.U. Desde poco después de esta fecha los señores Sánchez no hicieron pagos adicionales para amortizar el préstamo hipotecario obtenido de F.H.A. para adquirir la propiedad de marras."* (énfasis suplido).

*"8. Concluye el Ing. Bula, y encontró probado el Tribunal, que la estructura de marras está en tal estado de deterioro por vicios de construcción que no es habitable por seres humanos."*

Juan A. San Miguel, Inc. solicitó Revisión ante el Tribunal Supremo, recurso que fue declarado No Ha Lugar el 14 de octubre de 1994, e igualmente fue denegada la solicitud de reconsideración del 29 de noviembre de 1994, esta última notificada el 6 de diciembre de 1994.

Apenas 21 días luego, el 21 de diciembre de 1994, Juan A San Miguel, Inc. recurrió nuevamente ante Instancia, solicitando relevo de la Sentencia dictada el 9 de junio de 1994, predicada en la Regla 49.2 (3) de Procedimiento Civil de 1979; aduciendo fraude por parte de los demandantes, por razón de que desde el 30 de septiembre de 1994 los demandantes no eran dueños de inmueble afectado por los vicios, porque a esa fecha *"... ya el Alguacil Federal había otorgado escritura de venta judicial favor del acreedor hipotecario ejecutante. En tal trámite se emplazaron por edicto a los demandados (aquí demandantes) y se dictó sentencia en rebeldía. No surge de autos que los demandantes conocieren de tales detalles."*

El co-demandado San Miguel resume su *"ratio"* en reconsideración de sentencia ante Instancia de la siguiente manera:

*"6. La sentencia de este Hon. Tribunal está fundamentada, obviamente, en que los demandantes tienen un interés propietario en el inmueble. Pero ese interés propietario era ya inexistente desde julio de 1991 cuando los demandantes dejaron de amortizar el préstamo hipotecario. (Determinación de Hechos número 3). Sin embargo, los demandantes ocultaron, como queda dicho, el hecho de que a la fecha del juicio ya se había dictado en el foro federal sentencia en su contra en ejecución de hipoteca. Esa ocultación fue una fraudulenta."* Página 3 de Moción Solicitando Relevo de Sentencia, Anejo 9, pág. 36 del apelante.

## II

Instancia (Hon. Marcos T. Calderón Vázquez, J. ) dictó Sentencia Enmendada el 27 de diciembre de 1995 en la que modificó la anterior, eliminando del dictamen las partidas de $10,500 (arreglos estructurales) y $1,500 (pintura) y dejando las partidas de $3,000 (angustias mentales) y $2,000 (honorarios de abogados). La parte demandante recurre ante nos, solicitando se reinstalen las dos primeras partidas, por un total de $12,000. El 4 de marzo de 1996 dictamos Resolución concediendo a la parte apelada treinta (30) días para su alegato, contados a partir de la notificación, que ocurrió el 11 de marzo de 1996. El 12 de abril la apelada presentó *"Moción de Desestimación"*, la cual hemos

considerado y declaramos No Ha Lugar.

Al así actuar, Instancia en reconsideración determinó qu estando los demandantes imposibilitados de llevar a cabo los arreglos en la vivienda, ya ellos no contaban con legitimación activa al respecto, por lo que al no informarlo al Tribunal, incurrieron en conducta impropia dentro del contexto de la Regla 49.2, incisos 1 y 3 de las Reglas de Procedimiento Civil.

Encontramos que al así reconsiderar, Instancia erró. Procede revoquemos la Sentencia Enmendada de la cual se recurre

y reinstalemos en su totalidad la Sentencia original del 9 de junio de 1994. Resolvemos que, ante los hechos que esta causa informa, el Art. 1483, 31 L.P.R.A. 4124, no restringe la legitimación activa al dueño del inmueble, al momento del dictamen de sentencica.

## III
### Legitimación Activa

El ilustrado tribunal sustenta su dictamen en reconsideración eliminando las partidas de reparación de inmueble (estructurales y de pintura) por lo resuelto en *González v. Centex Construction*, 103 D. P.R. 82 (1974) *González, supra*, se circunscribe a una contratación ya imposible de cumplir, en la que la constructora contractualmente se obligó a corregir defectos específicos, el 1 de julio de 1966, pero nunca cumplió tal promesa y luego, para el 20 de octubre de 1979 (fecha de la sentencia de incumplimiento contractual) ya González no era dueño y sí lo era Housing Investment Corporation, quien no estaba obligada por el contrato habido, por lo que no siendo parte de tal contratación podía incoar demanda por los mismos vicios, directamente contra la constructora Centex.

En el caso ante nos no ha mediado acuerdo alguno. Los vicios ocurrieron siendo los demandantes los dueños del inmueble, quienes sufrieron los daños, los que reclamaron judicialmente y no han transferido tal derecho a persona alguna. La doctrina en torno a la disposición del Art. 1483 C.c 1930, *supra*, no limita el pago de tales daños a favor del titular propietario al momento del dictamen de sentencia. Dicho postulado configura una responsabilidad de orden público que reconoce como reclamante legitimario: (i) al dueño de la cosa que sufre la pérdida que causó el vicio de construcción, así como (ii) a cualquier tercero que haya sufrido daños a consecuencia de tal vicio de construcción.

No se requiere que para recibir el resarcimiento tal persona afectada deba retener el título de propiedad de la cosa damnificada para contar con legitimación activa al respecto. Hay que atenerse a las circunstancias particulares del caso y a cualquier derecho contractual entre partes.

En la causa que nos ocupa, los demandantes eran los dueños de la edificación cuando ocurrió su ruina por motivo de lo vicios de construcción. Debido a ello perdieron el uso, disfrute de la vivienda, la inversión habida y hasta el inmueble. Nunca hubo acuerdo específico de reparación que para su cumplimiento se requiriese que los demandantes fueran titulares. La acreedora hipotecaria nunca ejerció cláusula alguna de tal contrato de préstamo que trasladare a su haber el derecho que el Artículo 1483, *supra*, otorga al dueño; los demandantes nunca transfirieron a persona alguna tal derecho de resarcimiento, que fraguó y concretizó al momento de la manifestación de la ruina.

Por otro lado, la acreedora hipotecaria ejecutó su garantía luego de iniciado el proceso que nos ocupa, al amparo del Art 1483, *supra*. Aunque su garantía hipotecaria se encontraba mermada por la ruina sufrida, ello no le importó. Aparentemene el inmueble ruinoso le resultó suficiente para resarcir el monto adeudado y no acudir contra el deudor obligacional. La hipoteca se ejecutó sobre el inmueble como entonces estaba. Habiéndose iniciado y culminado ya la causa de daños por ruina, por parte de la persona más idónea para ello, el dueño de la obra, la doctrina de cosa juzgada impediría otra acción independiente sobre la misma ruina y daños, por parte del acreedor hipotecario, posterior adquirente, u otro subsiguiente adquirente del inmueble de referencia. Salvo que el acreedor hipotecario interviniere a tiempo en la causa del aquí demandante, para reclamar subrogación a virtud del contrato de préstamo (lo que no hizo), Farmer's Home se limitó a ejecutar en garantía de préstamo el remanente del inmueble, quedando impedido, así como cualquier otro sucesor en derecho, de traer nueva causa bajo el Art. 1483, *supra*, por la misma ruina contra el constructor. El acreedor hipotecario podrá

cobrar cualquier deficiencia en el recobro del préstamo hipotecario, si alguna, del seguro hipotecario o del deudor obligacional. Por ello, entre los aquí demandantes y cualquier ulterior titular dominical del inmueble existe *"solidaridad jurídica"*, que activaría la excepción de la cosa juzgada en su variante de impedimento colateral por sentencia, aunque no sean físicamente las mismas partes. *A & P Gen. Contractors v. Asoc. Caná,,* 110 D.P.R. 753 (1981), *Ramos González v. Félix Medina,* 121 D.P.R. 312 (1988), *Poll Sella v. Lugo Christian,* 107 D.P.R. 540 (1978).

## IV

¿Por qué confiscar al demandante los daños que la ruina le ha causado según reconocido judicialmente, por el hecho de que no los habrá de reparar? Aun en el supuesto de que el demandante hubiera permanecido titular del inmueble, el demandado no podría obligar al demandante a utilizar los dineros para reparar y pintar, ello era potestativo del demandante y quizás de su acreedor hipotecario, vía el contrato de hipoteca pero nunca del constructor y deudor por sentencia.

Aquí no hay duda de que los demandantes sufrieron la pérdida que causó la ruina. Ello además, inició la cadena que provocó el abandono del inmueble y su posterior ejecución. Contrario a la norma que inspiró el dictamen de González, ■ *supra*, aquí el resultado neto de la Sentencia Enmendada sería el de favorecer al mismo constructor causante de la ruina, pues luego de agosto de 1990 no existiría ese otro comprador-titular que pudiese ejercer la acción decenal sobre un inmueble terminado de construir y vendido el 21 de agosto de 1982. Tampoco para el 2 de diciembre de 1995 (fecha en que se dictó la Sentencia Enmendada que nos ocupa) existía quien pudiera ejercer contra el constructor la acción quincenal del segundo párrafo del Art 1483, *supra*, (por violación contractual) si existiese alguien con tal derecho, bajo la norma de *Federal Ins. v. Dresser,* 111 D.P.R. 96 (1981). Aún en el caso de que el término no haya expirado, y no se dé la *"solidaridad jurídica"* es legítimo favorecer al que compra por el precio completo y sin manifestación de ruina, sobre el que compra a descuento luego de evidente la ruina y en forma específica no adquiere el derecho a ejercer también tal acción en resarcimiento por vicios.

## V

### Conducta Impropia

Resulta del todo inmerecido e injustificado que el demandado impute al demandante conducta impropia de clase alguna y mucho menos del alcance que amerite el calificativo de fraude (Regla 49.2(3), 32 L.P.R.A. Ap. III, R. 49.2(3).

La parte demandante abandonó la casa ruinosa en 1985, en julio de 1991 se trasladaron a la Florida, E.U.A. y poco después dejaron de efectuar los pagos de la hipoteca que la gravaba. Era lógico pensar que en el transcurso ordinario de las cosas se ejecutase la hipoteca del inmueble. Aunque las partes ignorasen los detalles de tales trámites (en cuanto a la parte demandante el trámite se llevó por edictos y en rebeldía) ello constaba de la misma determinación de hechos núm. 3 de la Sentencia del 9 de junio de 1994. ¿Cómo puede el demandado imputar al demandante *"... fraude, sorpresa o, en la alternativa,... conducta impropia.."* ■ de algo que hasta el Tribunal de Instancia manifestó conocer en la sentencia?

## VI

Se deja sin efecto la Sentencia Enmendada del 27 de diciembre de 1995 en la causa CAC-90-1648 en tanto y en cuanto deja sin efecto resarcir las partidas de $10,500 y $1,500 por daños estructurales y pintura. Se reinstala en todo su efecto la sentencia del 9 de junio de 1994 en la citada acción civil CAC-90-1648, por un monto total de $17,000, la que devenga intereses legales del 7% anual desde el 20 de agosto de 1994 hasta su pago.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

**ESCOLIOS 96 DTA 94**

1. El Artículo 1483 del Código Civil dispone en lo pertinente que:

*"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviese lugar dentro de diez años, contados desde que se concluyó la construcción..."*

Como puede observarse, de los propios términos del Artículo 1483 no surge quién puede ser titular de la acción que dicho artículo contempla. El tenor literal de ese artículo sólo preceptúa que el contratista responderá de los daños causados por vicios de la construcción. No limita el pago de esos daños solamente al propietario actual del edificio.

*"... En ninguna decisión nuestra hemos resuelto que solamente los propietarios actuales del edificio tienen derecho a indemnización."*

*"... y reconocimos que el Artículo 1483 del Código Civil, "beneficia a cualquier propietario de la construcción." Como puede observarse, no resolvimos que dicho Artículo beneficia exclusivamente al propietario actual."* Wang v. F.S.R. Construction Cors., **94 J.T.S. 90,** pág. 12045.

*"De las consideraciones anteriores, claramente se desprende que no existe ningún impedimento jurídico a que el dueño de la obra pueda reclamar indemnización de los responsables por vicios de construcción bajo el Artículo 1483, aun luego de haber vendido la propiedad, si fue dicho dueño quien en efecto sufrió los daños resultantes de esos vicios. Por ser la parte perjudicada, tendría derecho a la acción contemplada en la medida de sus propios daños. Así ha sido expresamente reconocido en la doctrina civilista. Albaladejo, op. cit., págs. 308-312."* Wang v. F & R Construction Corp, supra, pág. 12046.

**2.** *"El análisis de cada caso depende naturalmente de las figuras jurídicas en juego La disponibilidad de tal variedad de causas no significa que pueda recobrarse bajo varias de ellas. Pereira v. I.B.E.C., 5 D.P.R. 28 (1967). No existe razón para no alzar en tales circunstancias la barrera de la doctrina del enriquecimiento injusto. Compañía Popular v. Corte, 63 D.P.R. 121 (1944); Sílva v. Comisión Industrial, 91 D. P.R. 891 (1965) " González v. Centex Const., supra, pág .82.*

**3.** Moción Solicitando Relevo de Sentencia, párrafo 4, pág. 35, apéndice recurrente.