# 2006 DTA 17

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL XI**

ROBERTO NACER VILARIÑO, CORALIA ELIZALDE CAMPO
Recurridos

v.

REMANSOS DE BOQUERÓN, S.E., WILMAR CONSTRUCTION, S.E.
Recurrentes

Núm. KLRA-05-00630

San Juan, Puerto Rico, a 18 de noviembre de 2005

Panel integrado por su Presidenta, la Juez Pesante Martínez,
la Juez Feliciano Acevedo y el Juez Salas Soler

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante nos la parte recurrente, Wilmar Construction, S.E., en ánimo de solicitar la revocación de una resolución emitida por el Departamento de Asuntos al Consumidor (*"D.A.C.O."*) de 22 de abril de 2005. La misma tuvo el efecto de declarar con lugar la querella presentada por la parte recurrida, Roberto Nacer Villariño y Coralia Elizalde Campo contra Wilmar Construction y la otra parte querellada, Remansos de Boquerón, S.E.

En consecuencia, se le ordenó a la recurrente la reparación de varios defectos de construcción en cierto período de tiempo y determinó que, de no ser corregidos dentro de ese término, debía satisfacer a la parte recurrida el valor de la reparación, según estimado por el inspector del D.A.C.O. en el informe que rindiera.

Por los fundamentos que esbozamos a continuación, y con el beneficio de la comparecencia de las partes, modificamos la resolución recurrida.

## I

Los hechos que originan el presente recurso se remontan al 11 de febrero de 2002 cuando los recurridos, Roberto Nacer Villariño y Coralia Elizalde Campo, adquirieron mediante escritura de compraventa el apartamento J-2 del proyecto denominado Caboquerón Resort. Este proyecto, cuyo dueño es la Sociedad Especial conformada por Remansos de Boquerón, fue construido por Wilmar Construction, firma dedicada a la construcción en general.

Transcurridos seis meses de adquirido el apartamento, los recurridos se percataron del surgimiento de ciertos defectos de construcción en la misma, los cuales fueron alertados oportunamente a la recurrente de diversas maneras, incluyendo la remisión de una carta por correo certificado detallando las observaciones surgidas.

Al no corresponder debidamente a sus reclamos, el 16 de septiembre de 2003, los recurridos presentaron ante el D.A.C.O. la querella que nos ocupa. En la misma se alegaron los siguientes defectos de construcción:

*"1) grietas en paredes y techo;*

*2) filtraciones en paredes y techo;*

*3) filtraciones por la caja de breakers;*

*4) azulejos rotos como consecuencia de las grietas."*

Los recurridos solicitaron la reparación de los defectos detallados o, en la alternativa, lo que procediera en derecho.

El 19 de marzo de 2004, una vez iniciado el procedimiento administrativo, uno de los inspectores del D.A.C.O. citó debidamente a las partes para inspeccionar la propiedad de los recurridos. Como resultado de dicha inspección, el 29 de junio de 2004, el inspector rindió un informe el cual consignó un total de 23 defectos que ameritaban corrección. El estimado sugerido del costo de reparación ascendió a la cantidad de $6,867.46. Conforme lo acotado por los recurrentes, y contrario a lo sugerido por la parte recurrida, ninguna de las partes objetó el informe del inspector dentro del término reglamentario de 15 días ni solicitaron su presencia en la vista administrativa.

Pasado el término de referencia, la parte recurrida presentó una solicitud para que se enmendara el informe del perito. Aparentemente, para poder corregir satisfactoriamente la filtración aludida en el hallazgo 17 del informe, no bastaba con remover solamente dos de las losetas o enchapado del apartamento contiguo al de los querellantes recurridos – apartamento desde donde único se podía corregir la falta advertida. Según indicado por el vecino de la pareja agraviada, aquellas losetas de su balcón señaladas a ser removidas como parte del proceso de reparación de la filtración ya no se conseguían, estaban agotadas. Ello obligaba, pues, a la remoción no de dos losetas, conforme estimado en el informe del D.A.C.O., sino de todas las losetas y el *jacuzzi* para acceder al origen de la filtración, redundando ello en un valor aparentemente muy superior a los $1,000 estimados por el D.A.C.O. Por su parte, la recurrente arguyó que dicho documento nunca les fue debidamente

notificado por lo que desconocían la mencionada información.

Así las cosas, el 23 de septiembre de 2004, durante la celebración de la vista administrativa del caso de epígrafe, las partes acordaron corregir los defectos de construcción, **conforme establecidos en el informe del D.A.C.O.**

Mediante moción informativa de 12 de enero de 2005, la parte recurrida acreditó la corrección satisfactoria de todos los defectos, con excepción de la filtración antes descrita. Ante la pretensión del recurrido, esto es, que el recurrente asumiera la responsabilidad absoluta del costo total de la remoción de todas las losetas y el *"jacuzzi"*, la recurrente ofreció reparos.

Debido a lo anterior, mediante comunicado de 17 de marzo de 2005, Wilmar Construction le informó a la pareja recurrida su disposición de corregir la filtración, **únicamente a la entrega del suelo de la propiedad contigua en las mismas condiciones en que los apartamentos fueron entregados por éstos inicialmente, es decir, sin la mejora o losa de cerámica añadida a la propiedad con posterioridad a la entrega.**

Esta respuesta mereció que el 18 de marzo de 2005, los recurridos presentaran ante el D.A.C.O. una solicitud urgente de remedio.

En vista de lo surgido, el D.A.C.O. señaló la continuación de la vista administrativa para el 12 de abril de 2005. La recurrente estimó que, habiendo corregido todos los defectos señalados, con excepción de la conocida filtración, no contestaron la querella instada. Durante la vista, la recurrida apostilló que, mediante el interrogatorio al cual fue sometido el inspector del D.A.C.O., este manifestó que a pesar de haber notado el defecto de la filtración, no incluyó en su estimado de corrección de defectos el costo de remoción e instalación de nuevas losas. La razón ofrecida para su omisión, de acuerdo a lo puntualizado por los recurridos, fue que al hacer la inspección no tuvo acceso al apartamento aledaño.

A esos efectos, la parte recurrida presentó un estimado preparado por un ingeniero de su selección el cual estimó el costo de reparación, según pretendido, en $8,499.25. Conforme estableció la recurrida, el mismo le fue entregado tanto a la recurrente como al Oficial Examinador por lo que debía formar parte del expediente administrativo. Adujo la recurrida que el referido informe nunca fue objetado ni refutado ni tampoco se requirió la presencia del ingeniero a cargo de la confección del mismo. La recurrente, por su parte, negó dicho parecer e indicó haber prestado su oportuna oposición al informe durante la vista.

El 22 de abril de 2005, el D.A.C.O. dictó la resolución aquí recurrida en donde determinó que, contrario a lo establecido y reiterado por las partes, la recurrente no había corregido los defectos de construcción. Además, la agencia concernida adoptó el estimado para la corrección de dichos defectos, acorde con lo concluido por el inspector en su informe de 29 de junio de 2004, el cual ascendía a $6,867.46. Así, el D.A.C.O. concluyó que el recurrente se vería obligado a reparar los defectos dentro de un período de veinte días; de incumplir con lo ordenado, debía satisfacerle a los recurridos la cantidad de $6,867.46.

El 10 de mayo de 2005, la recurrente presentó una solicitud de reconsideración, alertando que el D.A.C.O. incidió en concluir que las reparaciones no habían sido llevadas a cabo, cuando lo que debió concluir fue que la única reparación restante era la filtración ya identificada. Como cuestión de hecho, la recurrente solicitó que se reconociese que los defectos acordados entre las partes ya habían sido corregidos, excepto la filtración. Así, solicitó que se les ordenara corregir dicha filtración o, en su defecto, pagar a los recurridos el valor de la corrección, o sea, la cantidad de $1,000, según consta en el informe preparado por el inspector del D.A.C.O. cuyo contenido, reiteraron, no fue impugnado dentro del término reglamentario de 15 días.

El 11 de mayo de 2005, el D.A.C.O. emitió una resolución acogiendo la solicitud de reconsideración

presentada por los recurrentes. Ese mismo día, los recurridos presentaron una solicitud de enmiendas a las determinaciones de hechos y solicitud de reconsideración. Arguyeron, mediante la misma, que el D.A.C.O. erró:

*"1) al indicar que la recurrente no había corregido las deficiencias;*

*2) al no incluir que el técnico que realizó la inspección había estado en la vista administrativa;*

*3) al no incluir el testimonio del técnico;*

*4) al no tomar en consideración un estimado del costo de reparación presentado por los recurridos, tomando en cuenta el estimado de la reparación por ellos presentado."*

Oportunamente, el 19 de mayo de 2005, la recurrente se opuso a la solicitud de enmiendas a las determinaciones de hechos. Por un lado, Wilmar Construction coincidió con los recurridos en cuanto al único defecto que faltaba por corregir, esto es, la filtración. De otra parte, planteó que el informe rendido ante el D.A. C.O., por no haber sido objetado en tiempo, debía ser considerado debidamente sometido y estipulado.

El 25 de mayo de 2005, los recurridos presentaron su réplica a la oposición. Ante el hecho de haber traído ante la atención del Oficial Examinador el estimado del costo de reparación removiendo todas las losetas, la parte recurrida recabó que el mismo formaba parte del expediente por lo que debía ser considerado para la formulación de una determinación final.

En cuanto a la moción de reconsideración presentada por la parte recurrida, el D.A.C.O. no se expresó sobre la misma, por lo que la parte recurrente advirtió que debía considerarse como no acogida.

No empero, el 9 de agosto de 2005, el D.A.C.O. emitió una orden dejando sin efecto la resolución y orden que nos ocupa y señaló una continuación de vista para el 26 de agosto de 2005.

En respuesta a dicho curso, el 15 de agosto de 2005, la recurrente solicitó que se dejara sin efecto esta nueva orden El argumento levantado fue la falta de jurisdicción, toda vez que el foro administrativo la había perdido al no resolver la reconsideración de la parte recurrente dentro de los 90 días estatuidos y no acoger la solicitud presentada el 11 de mayo de 2005 por los recurridos. Del expediente no se desprende oposición por parte de los recurridos a dicha moción. Tampoco fue celebrada la vista pautada para el 26 de agosto de 2005 por conflictos en el calendario de la parte recurrida.

Insatisfechos con el curso decisorio que antecede, Wilmar Construction acude ante nos, planteando dos errores, a saber, la conclusión del D.A.C.O. de no haberse reparado ninguno de los defectos y que la recurrente venía obligada a reparar los mismos dentro de un período de 20 días. De incumplir, tendrían que pagar $6,867.46, cantidad por éstos objetada.

En cumplimiento con lo ordenado por esta Curia, la parte recurrida presentó su alegato. Mediante el mismo, expuso que aunque coincidían con la parte recurrente en que el D.A.C.O. emitió la orden de 9 de agosto de 2005 sin tener jurisdicción y que la mayoría de los defectos fueron corregidos, trajeron a colación el resurgimiento de defectos, aludiendo que las reparaciones efectuadas fueron ineficientes. La parte recurrida advirtió que aun dado el hecho que el D.A.C.O. actuó sin jurisdicción, les amparaba la oportunidad de que el foro revisara sus propias determinaciones, máxime con el alegado surgimiento de nuevos hechos que variarían, según ellos, el resultado final del proceso administrativo.

Los recurridos reseñaron, además, que aunque la parte recurrente sostuvo que la cantidad que vendría

obligada a pagar eran los $1,000 estimados, en caso de que no repararan, dicha cantidad debía ser considerada como errónea. La parte sugirió que dicho estimado no incluyó unos costos que el propio inspector del D.A.C.O. aceptó como no incluidos en su informe. Nos dijo la parte recurrida que ante la falta de dicho estimado, procedía adoptar el sometido por éstos el cual ascendía a $8,499.25. En la alternativa, los recurridos sugirieron que debíamos devolver el caso ante la consideración de la entidad gubernamental concernida para que tuviese la oportunidad de estimar los costos adicionales necesarios para realizar la reparación que restaba.

Evaluado el expediente en su totalidad y con el beneficio de la comparecencia de las partes, modificamos el dictamen recurrido. En primer lugar, coligiendo que los defectos advertidos en la querella inicial fueron corregidos, conforme la anuencia de las partes, resta resolver la reparación de la filtración a la cual hemos hecho múltiples referencias y el costo adicional de la misma. En consecuencia, devolvemos el caso ante el D.A.C.O. para que señale con la celeridad que lo amerita, una continuación de vista administrativa con el propósito de: 1) evaluar mediante prueba fehaciente y a la luz de la totalidad de las circunstancias, el costo total de la reparación de la aludida filtración; y 2) fije la extensión de la responsabilidad de las partes para satisfacer debidamente la reparación de la misma a base del costo de reparación estimado y acordado.

En segundo lugar, en cuanto al alegado resurgimiento de defectos de lo aparentemente ya corregido por el recurrente, ordenamos que la agencia concernida inspeccione nuevamente la propiedad en controversia [1] para dirimir si estos defectos: 1) surgieron porque su reparación se hizo contraviniendo al tenor de su obligación, 31 L.P.R.A. 3015; ó 2) son el surgimiento de nuevos defectos fuera de la jurisdicción del D.A.C.O., en virtud de la Ley Núm. 130 de 12 de junio de 1969, según enmendada, 17 L.P.R.A. 501 *et seq.,* también conocida como la Ley del Oficial de la Construcción. De resolver de acuerdo a lo primero, el D.A.C.O. tendrá la obligación de celebrar una vista administrativa para discutir los hallazgos del informe y resolver cónsono con los procedimientos típicos en estos casos. Por el contrario, de resolver en virtud de lo segundo, el término estatuido de dos años para reclamar al constructor sobre los defectos avistados ha pasado, por lo que no podrá la parte recurrida presentar una querella sobre los mismos ante el D.A.C.O. al éstos carecer de jurisdicción para atender el mismo.

## II

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (*"LPAU"*), 3 L.P.R.A. sec. 2275, dispone al respecto que *"[l]as determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* Véase *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881, 889 (1999).

La revisión judicial de las actuaciones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue aprobado, (2) si las determinaciones de hechos efectuadas por la agencia están sostenidas por evidencia sustancial que obre en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho fueron correctas. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 532 (1993). A estos fines, evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. La parte afectada debe demostrar que en el récord administrativo existe otra prueba que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto que no pueda concluirse que la determinación de la agencia fue razonable. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998).

Al respecto, en *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387, 397-398 (1999), se reiteró que *"para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el expediente que razonablemente reduzca o menoscabe el peso de tal evidencia. Si en la solicitud de revisión, la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben sostenerse por el tribunal revisor."* *Domínguez v. Caguas Expressway Motors, supra*, a la pág. 398; *Ramírez v. Depto. de Salud*, 147 D.P.R. 901

(1999).

En esa misma línea, la sección 3.15 de la LPAU, 3 L.P.R.A 2165, provee para que la parte adversamente afectada por una determinación de una agencia administrativa pueda solicitar reconsideración ante la agencia. A tales efectos, la ley dispone lo siguiente:

*"La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzara a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días, salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales."*

*Véase,* también *Pérez v. VPH Motor Corp.*, 152 D.P.R. 475 (2000). Véase, además, la Regla 28.1 del Reglamento de Procedimientos Administrativos del D.A.C.O. Número 5416 de 23 de mayo de 1996.

### III

Conforme lo anterior, la resolución que puso fin al caso de epígrafe fue dictada el 22 de abril de 2005 y notificada a las partes en esa misma fecha. Por lo tanto, en virtud de las disposiciones de referencia, las partes tenían hasta el 12 de mayo de 2005 para solicitar reconsideración. Tanto la recurrente como la recurrida cumplieron con el cometido, el 10 y 11 de mayo de 2005, respectivamente. Es así como el D.A.C.O. tenía hasta el 25 de mayo de 2005 para acoger la solicitud de reconsideración de la recurrente y hasta el 26 de mayo de 2005 para acoger la de la parte recurrida.

Así las cosas, el 11 de mayo de 2005, mediante resolución a esos efectos, acogió la solicitud presentada por los recurrentes [mas no así la solicitud de la recurrida], notificando la misma ese mismo día, por lo que tenía hasta el 8 de agosto de 2005 para resolver la misma.

Transcurrido el término, y como bien observó la parte recurrente, el D.A.C.O. no resolvió los planteamientos contenidos en la misma, razón por la cual perdió jurisdicción para así hacerlo. Ante este curso decisorio, la parte recurrente acudió ante nos mediante el recurso de epígrafe dentro de los 30 días señalados en el ordenamiento para así hacerlo.

En relación a la solicitud de reconsideración presentada por los recurridos, el D.A.C.O. guardó silencio por lo que debe considerarse rechazada de plano. Conforme la sección 2165 y la antes citada Regla 28.1, el D.A.C.O. perdió jurisdicción sobre la misma; los recurridos tenían hasta el 25 de junio de 2005 para solicitar revisión judicial, lo cual no hicieron.

De acuerdo al trayecto procesal antes reseñado, el D.A.C.O. tenía hasta el 8 de agosto de 2005 para resolver la solicitud de reconsideración acogida [la de los recurrentes], fecha a partir de la cual, por no resolver dentro del término, perdió jurisdicción para tomar determinación alguna sobre el caso.

No empero, el 9 de agosto de 2005, el D.A.C.O. emitió una orden dejando sin efecto la resolución y orden de notificada el 22 de abril de 2005 y señaló una continuación de la vista para el 26 de agosto de 2005. Coincidimos con la oposición presentada por la parte recurrente ante el fundamento de falta de jurisdicción de la agencia para emitir su dictamen, resultando inoficioso todo lo sucedido con posterioridad al mismo. No obstante, impera la determinación de 22 de abril de 2005. Aclarado dicho punto, procedemos a modificar el dictamen recurrido advirtiendo lo siguiente.

La resolución en controversia, la cual tuvo el efecto de declarar con lugar la querella que nos ocupa, determinó que, con posterioridad a la inspección, la parte recurrente no reparó las deficiencias señaladas por lo cual el costo de reparación de las mismas ascendía a $6,867.46. De dicha manera, proveyó a la parte recurrente un término para corregir todos los defectos; de no cumplir, los obligaba a pagar la cantidad de $6,867.46.

Siendo un hecho indubitado el que ambas partes hayan concordado sostenidamente en cuanto a que el único defecto que restaba por corregir era la filtración en la pared lateral de los dormitorios 2 y 3, erró el D.A.C.O. al concluir que ninguno de los defectos había sido corregido. En consecuencia, la conclusión que el costo total de la reparación es de $6,867.46, debe ser revisada. Veamos.

Según se desprende del informe, el estimado de la reparación de la filtración era solamente de unos $1,000. Ahora bien, surgen dudas a raíz de la contención esbozada por la parte recurrida, alegadamente traída de manera oportuna ante la atención de la instrumentalidad pública que nos concierne. Según aceptado por el propio inspector de cuya autoría es el informe sobre el cual el D.A.C.O. rindió su determinación, el estimado de $1,000 no incluye el imprevisto surgido con posterioridad al vencimiento del término para impugnar el mismo, esto es, el sobrecogedor proceso a seguir para corregir la filtración señalada. Recordemos que del propio testimonio del inspector, éste realizó sus labores sin inspeccionar el apartamento contiguo a la propiedad en controversia y desde donde se debe corregir el consabido defecto. La parte recurrente nunca ofreció reparos para corregir la filtración. Sin embargo, para hacerlo, se percataron en un principio que debían remover, como mucho, dos losetas del piso del apartamento vecino, losetas añadidas con posterioridad a la entrega de las viviendas.

Al darse a la tarea de conseguir el reemplazo de las losetas, las partes se percatan que las mismas estaban agotadas en el mercado. Ello obligaba a remover no dos, sino todas las losetas y el jacuzzi, en obvia señal de que el estimado de $1,000 ascendería a una cantidad sustancialmente mayor.

No empero, los recurrentes exigieron que, para poder corregir la filtración, debían recibir el apartamento aledaño tal y como lo habían entregado inicialmente en el 2002, es decir, sin las losas ni el jacuzzi. Además, se negaron a absorber la responsabilidad pecuniaria de dicha remoción adicional y fijaron su responsabilidad total en los $1,000 señalados en el informe.

Los recurridos, por su parte, insistieron que el D.A.C.O. erró al no tomar en consideración, como parte de su dictamen, un estimado por ellos presentado en donde se sostiene que la reparación adicional asciende a $8,499.25.

Ante este aparente tranque, esto es, determinar el costo adicional para reparar la filtración y cómo se distribuiría la responsabilidad entre las partes para satisfacer la reparación, el D.A.C.O. hizo caso omiso, y erróneamente, optó por concluir que ningún desperfecto había sido corregido, fijando los términos y cantidades hoy en disputa.

A la luz del recuento fáctico que antecede y luego de un cuidadoso análisis del expediente en su totalidad, modificamos la resolución recurrida. Aclarado que a la fecha de emitida la resolución que nos ocupa -conforme acordado por las partes-, todos los defectos habían sido corregidos, devolvemos el caso para la pronta celebración de la continuación de la vista administrativa. Mediante la misma, el D.A.C.O. debe explorar y

determinar: 1) el costo adicional de la reparación de la filtración restante; y 2) la extensión entre las partes de su responsabilidad pecuniaria para corregir satisfactoriamente la falta señalada.

## IV

Resuelta la controversia de umbral en el caso que nos ocupa, resta por determinar si ante la contención traída por la parte recurrida que los defectos corregidos que resurgieron deben ser objeto no de nueva inspección y estimación de costos, según sugerido, sino de una nueva querella ante el D.A.C.O., nos expresamos.

En este caso, el D.A.C.O., actuando sin jurisdicción, dejó sin efecto la resolución recurrida y señaló nueva vista. Aun concurriendo con la parte recurrente que el D.A.C.O. carecía de jurisdicción para dejar sin efecto su dictamen, la parte recurrida aprovechó la coyuntura para traer ante nuestra atención el resurgimiento de defectos.

El Secretario del Departamento de Asuntos del Consumidor tiene, entre los poderes conferidos por el legislador, los siguientes:

*"(d) Poner en vigor, implementar y **vindicar los derechos de los consumidores**, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa **con plenos poderes para adjudicar ante su consideración y conceder los remedios pertinentes conforme a derecho, disponiéndose que las facultades conferidas** en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones...*

*(i) Interponer **cualesquiera remedios legales que fueran necesarias para hacer efectivos los propósitos de la ley** y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento."*

3 L.P.R.A. 341e(d)(i). (Énfasis nuestro.)

En *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218 (1974), el Tribunal Supremo concluyó en una pugna entre un contratista y un comprador de una vivienda, que el primero incumplió el contrato de compraventa y le ordenó reparar los defectos de que adolecía la misma. Advirtió que en este tipo de caso, los tribunales deben ser especialmente cuidadosos al revisar las decisiones en este campo, para proteger la ciudadanía contra posibles actuaciones arbitrarias. En fin, **D.A.C.O. tiene la facultad expresa para tomar las medidas correctivas que proceden en derecho, conceder el remedio que considere apropiado en derecho e interponer cualquier remedio legal y necesario para hacer efectivos los propósitos de la ley**. 3 L.P.R.A. sec. 341(e); 23 L.P.R.A. secs. 1004(8)-1005(b).

Por otro lado, el Reglamento del Negocio de la Construcción fue promulgado al amparo de la autoridad conferida al Secretario del D.A.C.O. Dicho reglamento faculta al Secretario a tomar acciones para *"evitar que alguna persona incurra en prácticas indeseables de la construcción o cometa cualquier acto intencional o fraudulento que cause perjuicio sustancial al comprador de una vivienda."* Sección 2(7) del Reglamento. Así también le confiere la facultad para investigar y adjudicar las querellas radicadas sobre prácticas indeseables en el negocio de la construcción; sección 2(8) del referido Reglamento **concediendo los remedios pertinentes conforme a derecho**.

Dicho reglamento fue promulgado al amparo de la Ley Núm. 130, *supra*. El Artículo 11 de esta Ley dispone que las acciones para exigir responsabilidad por vicios o defectos de construcción caducan por el transcurso de dos años a partir del otorgamiento de las escrituras. Basándose en ese precepto, bien se podría sostener que el D.A.C.O. carece de de jurisdicción para adjudicar en los méritos la queja de los recurridos sobre

el resurgimiento de los defectos, los cuales vale resaltar que no detalla en su alegato. Sólo se refiere a ellos como resurgimiento de los ya arreglados.

En mérito de ello, procede ordenarle al D.A.C.O. que lleve a cabo los procedimientos concernientes para que se proceda a realizar una reinspección de la propiedad que nos ocupa -teniendo en mente, claro está, la nota al calce número uno de esta Sentencia-, de suerte que el D.A.C.O. pueda determinar si los defectos aludidos por la parte recurrida corresponden a los ya corregidos o si son defectos o vicios nuevos.

En la eventualidad que el inspector corrobore los defectos resurgidos y determine que los mismos coinciden en identidad con aquellos alegados en la querella original, no le es de aplicación el término de dos años del que nos habla la Ley Núm. 130, *supra*. El D.A.C.O., como agencia con jurisdicción primaria para atender la controversia, tendría, pues, el deber de resolver bajo lo postulado en el Artículo 1051 del Código Civil, 31 L.P. R.A. 3015, el cual dispone que si el obligado a hacer alguna cosa no la hiciera, se mandará ejecutar a su costa. Lo mismo se debe observar si la hiciere contraviniendo el tenor de la obligación.

Asimismo, muy bien podría dicho foro razonar que de acuerdo al artículo mencionado, podrá decretarse que se deshaga lo mal hecho. *González v. Centex,* 103 D.P.R. 82 (1974); *Pereira v. Ibec,* 95 D.P.R. 28 (1967). En dichas decisiones se establece que el constructor de una obra es responsable de la corrección de los defectos de la misma, cuando conviene en repararlos con la parte perjudicada, irrespectivo de si los defectos son arruinantes.

De otra parte, si el resultado de la reinspección denotara el **surgimiento -no el resurgimiento- de nuevos vicios,** el D.A.C.O. carecería de jurisdicción para atender dicho reclamo. 17 L.P.R.A. sec. 511. Recordemos que cuando la ley establece que un determinado acto, que representa la actuación de un derecho, sea ejercitado dentro de un tiempo dado, este término es el punto de partida de la extinción del derecho. Dentro de un término de caducidad, a diferencia de un término prescriptivo, no opera la interrupción del mismo, sino la ejecución en tiempo de tal derecho o acción y el término no puede ser revivido una vez transcurre el mismo. Véase, *Industrial Equipment Corp. v. Builders Ins. Co.,* 108 D.P.R. 290, 306 (1978); *Ortiz Rivera v. Sucn. González,* 93 D.P.R. 562 (1966).

En el pleito que nos ocupa, al haber transcurrido más de tres años desde el otorgamiento de la escritura de compraventa y el señalamiento por parte de los recurridos de alegado resurgimiento de defectos, es imperativo para el D.A.C.O. auscultar el origen de los mismos, a tenor con lo aquí resuelto, para dirimir el remedio a proveer.

Como consignamos anteriormente, el D.A.C.O. está facultado para vindicar los derechos de los consumidores, por lo que tiene pleno poder para resolver las controversias presentadas ante sí conforme a derecho, ofreciendo cualquier remedio efectivo, sin necesidad de ceñirse a lo solicitado por cualquiera de las partes.

## V

En vista de que la actuación del D.A.C.O. se aparta de las que le corresponde implementar, intervenimos con el criterio de la agencia. *Chase Manhattam v. Emmanuelli Bauzá,* 111 D.P.R. 708, 712-713 (1981). Habida cuenta de ello, nos apartamos de la norma de autorestricción. En consecuencia, modificamos la resolución recurrida y devolvemos el caso ante la agencia para resolver conforme lo aquí intimado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones