Rafael Matheu, como cesionario de la Sociedad Sucrs. de F. Ortega & Cía., S. en C., demandante y apelado, *v.* Raúl Colón, demandado y apelante.

No. 6921.—*Sometido:* Diciembre 20, 1935. *Resuelto:* Enero 16, 1936.

*Eduardo Urrutia Martorell,* abogado del apelante; *J. Pedro Miranda,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Raúl Colón y la mueblería El Globo, de Sucrs. de F. Ortega & Co., S. en C., celebraron un contrato de venta condicional en virtud del cual el primero compró, por la cantidad de $410, ciertos muebles a la referida firma. Convino el comprador en satisfacer $70 de contado y $28.33 los días 12 de cada subsiguiente mes, hasta el saldo total de la cantidad estipulada. El mismo día en que se firmó el contrato de venta condicional Colón suscribió a favor de la vendedora doce

pagarés por la suma de $28.33 a vencer cada uno dos días después de la fecha del vencimiento de cada plazo fijado en el contrato de venta condicional. La firma vendedora endosó estos pagarés al Royal Bank of Canada, quien los descontó, abonándolos en cuenta a dicha firma. Satisfizo Colón el plazo de $70, y así continuó pagando, mientras iban venciendo, los primeros seis pagarés al banco mencionado. Los seis pagarés restantes no fueron satisfechos, siendo devueltos por el Banco a la firma vendedora, quien se hizo cargo de los mismos.

Rafael Matheu, como cesionario de dicha firma, inició una acción en la corte municipal contra Colón, basada en el contrato de venta condicional, solicitando que de acuerdo con el mismo se le entregaran los muebles vendidos. La corte municipal dictó sentencia ordenando al márshal que se incautara de los muebles objeto del litigio y los entregara a Rafael Matheu. No conforme con esta sentencia, Raúl Colón estableció recurso de apelación para ante la Corte de Distrito de San Juan. Se sustituyó como demandante a Manuel Portela, cesionario de Matheu. La corte de distrito falló también el caso a favor del demandante. El demandado ha interpuesto el presente recurso de apelación, atribuyendo a la corte inferior dos errores. El primero se basa en que la sentencia es contraria a los hechos probados y contraria a derecho. En realidad, el apelante, bajo este primer señalamiento, engloba tres errores que pasamos a discutir.

Se alega que la firma vendedora, al solicitar y aceptar los doce pagarés del comprador, varió de tal manera el contrato condicional que éste quedó novado, no pudiendo, por lo tanto, la vendedora ejercer derecho de acción alguno a base del contrato condicional, sino a base de los pagarés, que constituyen una obligación personal. La corte inferior resolvió que no existía tal novación, ya que no fué ésta la intención de las partes, citando el caso de *Hernández* v. *Burgos,* 40 D.P.R. 460, 463. La prueba demuestra que los pagarés se otorgaron para que la vendedora pudiera negociarlos y realizar en metálico la obligación contraída. De acuerdo con el

artículo 1158 del Código Civil, edición 1930, "para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente o que la antigua y la nueva sean de todo punto incompatibles."

En el presente caso no hubo evidencia en el sentido de que la intención de las partes fuera la de novar el contrato original ni puede deducirse esa intención de la transacción efectuada. Tampoco puede decirse que surgió una nueva obligación y un nuevo derecho de acción al otorgarse los pagarés, ya que bajo el contrato condicional la vendedora tuvo siempre el derecho de ejercitar una acción personal en cobro de su crédito, así como a demandar la restitución de la propiedad. *Brockway Motor Truck Corporation* v. *Monclova,* 42 D.P.R. 885.

■■ Arguye el apelante que la aceptación de los pagarés por la vendedora produjo el efecto de saldar la deuda contraída, quedando por lo tanto, extinguido el contrato de venta condicional. Es cierto que Diego Soto, gestor de la vendedora, declaró que los pagarés significaban el pago de ese contrato; pero de la evidencia aportada se deduce claramente que este testigo lo que quiso decir fué que los pagarés evidenciaban el compromiso de parte del deudor de satisfacer la obligación. Esta es la única conclusión que surge de los hechos y de las circunstancias que concurren en este caso. José R. Vicente, por ejemplo, empleado del Banco, declara que al descontar los pagarés lo que se hizo en realidad fué anticipar el dinero a F. Ortega & Co., S. en C., quedando esta firma obligada a pagar las cantidades que dejase de satisfacer el comprador condicional Raúl Colón. ¿Cómo es posible que pueda interpretarse de otro modo esta negociación? ¿Cabe concebir que las partes se hayan tomado el trabajo de celebrar un contrato de esta naturaleza para en el mismo día y en la misma transacción aceptar pagarés en pago de la suma convenida, en el entendido de que la aceptación de esos pagarés había de surtir el efecto de saldar y extinguir la obligación contraída bajo el contrato condicional? Si esa fué la

intención de las partes, ¿por qué se realizó la inútil labor de celebrar un contrato de venta condicional, cuando bastaba, para realizar esa intención, el otorgamiento de los pagarés y su aceptación por el vendedor condicional? Lo lógico es concluir, y así lo entendió el propio deudor demandado, según aparece de su testimonio, que los pagarés se suscribieron con el único fin de poder negociarlos para reducirlos a dinero y obtener el importe de los mismos.

En una anotación que aparece en "American Law Reports", tomo 13, pág. 1044, se estudia la teoría general sobre el efecto de suscribir pagarés en ventas condicionales y se dice:

"Un contrato de venta condicional por el cual el vendedor retiene el título no se convierte ordinariamente en una venta absoluta por el hecho de que el comprador suscriba un pagaré obligándose a pagar incondicionalmente el precio de la venta."

En el caso de *Segrist* v. *Crabtree,* 131 U. S. 287, 289, la Corte Suprema de los Estados Unidos se expresa en los siguientes términos:

"Una de las cuestiones principales que surge de la evidencia es si los dos pagarés, que vencían respectivamente en septiembre 1881 y septiembre 1882, fueron aceptados como un pago efectivo (en cuyo caso el remedio es a base de los pagarés) o solamente como evidencia de la cantidad que debía pagar Crabtree. En Sheehy v. Mandeville, 6 Cranch, 253, 264, el Juez Presidente Marshal dijo: 'No puede negarse que un pagaré, sin mediar un contrato especial, por sí mismo no elimina la causa de acción original. Pero se insiste en que si por un acuerdo expreso el pagaré se recibe como pago entonces satisface el contrato original, y la parte que lo recibe tiene su remedio solamente a base del pagaré. Este principio parece estar firmemente establecido. Puesto que el demandante no ha negado la alegación de que el pagaré se suscribió y fué aceptado como pago de la cuenta, limitándose a presentar una excepción previa, el hecho queda admitido, y una vez hecha esta admisión la acción en contra de los bienes no puede ser ejercitada.' En Peter v. Beverley, 10 Pet. 532, 568, se dijo que la aceptación de un pagaré por una deuda anterior no extingue esa deuda, a menos que la evidencia resulte tan clara y satisfactoria que no admita duda razonable de que esa fué la inten-

ción de las partes. En Layman v. Bank of the United States, 12 How. 225, 243, se sostuvo que la mera aceptación del pagaré por el acreedor no equivale necesariamente a un pago de la deuda original, y si hubo o no acuerdo de recibirlo como saldo, o si las circunstancias que rodeaban la transacción justificaban tal inferencia, fueron cuestiones a decidir por el jurado. En The Kimball, 3 Wall. 37, 45, la corte dijo que 'de acuerdo con la ley general de comercio, tanto en Inglaterra como en los Estados Unidos, un pagaré no salda la deuda por la cual se suscribe, a menos que exista un acuerdo expreso entre las partes; sólo trae como resultado extender hasta la fecha de su vencimiento el pago de la deuda. El acreedor puede devolver el pagaré al no ser satisfecho y proceder contra la deuda original. La aceptación del pagaré se considera acompañada con la condición de su pago.' Estos casos demuestran el curso de las decisiones de este tribunal.''

Como ya hemos dicho, la prueba demuestra que los pagarés no fueron aceptados como saldo de la obligación contraída bajo el contrato condicional, que continuó vigente entre las partes después de su otorgamiento. Arguye el apelante que cuando la vendedora condicional endosó los pagarés al Royal Bank of Canada renunció a los derechos derivados de dicho contrato. Basa el apelante su afirmación en la teoría de que el vendedor condicional retiene un título absoluto y de que cualquier acto de éste en el sentido de considerar la transacción como una deuda personal es incompatible con la retención de ese título por el vendedor. Se cita en apoyo de esta teoría el caso de *Winton Motor Carriage Co.* v. *Broadway Automobile Co.,* 65 Wash. 650, 118 P. 817. Asumiendo que la doctrina sentada en el caso citado constituye una correcta interpretación de la ley en el estado de Washington, no podría aplicarse esa doctrina en esta jurisdicción, donde hemos resuelto que el vendedor condicional no retiene un título absoluto sobre los bienes vendidos, sino que por el contrario el comprador adquiere ese título sujeto a una condición resolutoria. *Montalvo* v. *Valdivieso,* 38 D.P.R. 545; *De Gracia* v. *Guardiola,* 38 D.P.R. 573; *Pueblo* v. *Flores,* 48 D.P.R. 589; *Rubio* v. *Nin,* 48 D.P.R. 977.

La jurisprudencia aplicable a Puerto Rico es aquélla que

prevalece en las jurisdicciones donde se sostiene que la retención del título por el vendedor constituye más bien una garantía que un título absoluto.

▮ Nuestra ley de venta condicional concede el derecho de utilizar ambos remedios en su artículo octavo, según el cual "si el producto de la venta fuere menor que la cantidad adeudada al vendedor condicional y los gastos de almacenaje y venta, el vendedor condicional, su sucesor o cesionario, tendrá un derecho de acción contra el comprador condicional por el montante de dicho déficit."

En *Johnson* v. *Martin Furniture Co.*, 139 Tenn. 580, 202 S. W. 916, la corte se expresó así:

"La mueblería, en el contrato escrito de venta, retuvo el título de los bienes hasta que fueran pagados en su totalidad por el comprador, conjuntamente con el derecho de tomar posesión y disponer de los mismos de acuerdo con la ley de ventas condicionales. No habiendo pagado Johnson ciertos plazos, la mueblería lo demandó y obtuvo una sentencia personal en su contra. No pudo ser ejecutada la sentencia y esta acción (*replevin*) para recobrar la posesión de los bienes fué posteriormente interpuesta.

"El peticionario Johnson insiste en que la sentencia obtenida en esa acción personal fué una elección decisiva de parte del vendedor que impide que se utilice subsiguientemente la acción para recobrar la posesión de los bienes (*replevin*), y su abogado se basa en la doctrina establecida en varios casos que se citan a continuación. (Citas.)

"El razonamiento de las cortes que aplican esta teoría es: que el vendedor, cuando el comprador incurre en mora, tiene opción de (*a*) considerar el contrato como un acuerdo de bienes vendidos y entregados y demandar en cobro del precio bajo esta teoría, o (*b*) demandar en daños y perjuicios (*tort*) por una apropiación ilegal (*conversion*) o demandar para recuperar la posesión de los bienes (*replevin*), como un remedio específico. Si se utiliza el primer remedio se descansa en la teoría de que después de incurrir en mora el comprador, el título pasa a él por elección del vendedor demandante. Pero, si se acude a cualquiera de los otros dos remedios, se asume que el título aún lo retiene el demandante. Por lo tanto, estos remedios, aunque alternativos, se consideran de tal manera incompatibles, que si se trae una acción personal, se hace una elección decisiva que impide el ejercicio de la acción para recobrar la posesión

de los bienes (*replevin*), o una acción de *trover*. Existe una marcada divergencia en las decisiones sobre esta cuestión debido quizás a diferencias en los conceptos fundamentales sobre la naturaleza del título que se retiene en un contrato de venta condicional.

"En este estado dicha retención del título por el vendedor es una garantía sobre la obligación personal del precio, que participa de la naturaleza de un gravamen sobre los bienes muebles. (Citas.)

"En esta jurisdicción y varias otras, siguiendo la intención de la ley, la obligación personal de una deuda es una cosa, y el gravamen sobre cierta propiedad garantizando esa deuda es otra. El acreedor puede actuar a base de ambas, y su elección de acogerse a una de ellas no excluye o equivale a una renuncia (*waiver*) del otro remedio. Así el gravamen de una hipoteca, ya sea sobre bienes muebles o inmuebles, no desaparece por el hecho de obtenerse una sentencia, que no ha sido satisfecha, sobre la obligación *in personam,* y el gravamen puede ser ejecutado posteriormente en una acción para hacer efectiva la sentencia. (Citas).

"Bajo esta teoría de este derecho básico del vendedor no surge incompatibilidad entre los dos remedios. La acción para recobrar la posesión (*replevin*) puede ser ejercitada con el objeto de obtener la venta de la propiedad de acuerdo con las disposiciones de la sec. 3666 de Thomp. Shan. Code. Según la sec. 3668 si la propiedad no produce una suma suficiente para pagar la deuda a favor del vendedor, subsiste una deuda válida por el remanente en contra del comprador."

En *Ratchford* v. *Cayuga County Gold Storage & W. Co.,* 217 N.Y. 565, 112 N.E. 447, 448, el Juez Cardozo, hablando a nombre de la Corte, dijo:

"El apelante alega que por el hecho de haberse promovido una acción por el precio del contrato, y haberse obtenido una sentencia, el vendedor perdió el derecho de readquirir la posesión de la propiedad, y que el título del comprador por lo tanto se convirtió en absoluto aunque antes había sido condicional.

"La solución de esta cuestión depende de la ley sobre elección de remedios. Cuando un demandante tiene derecho a dos remedios incompatibles basados en reclamaciones irreconciliables la selección de uno excluye el otro. Pero para que tenga este efecto los remedios tienen que ser incompatibles. Aquí no aparece esa incompatibilidad. El contrato dice que el título permanecerá sin sufrir cambio

alguno hasta que el precio quede satisfecho. El vendedor tenía derecho a recibir el precio e interpuso una acción con ese fin. La sentencia preserva la obligación surgida de la promesa del comprador de satisfacer el precio, pero la pone en otra forma. No hay incompatibilidad entre la tentativa de obtener el dinero y la retención del título si fracasa la tentativa. Al establecer su título el vendedor no considera el contrato como nulo desde su nacimiento. (Citas.) El contrato se considera como subsistente y puesto en vigor de acuerdo con sus términos.

"Nuestra conclusión en el sentido de que el vendedor condicional puede demandar en cobro de un plazo del precio, y posteriormente, si no puede obtener el pago, readquirir la propiedad, está sostenida por muchas decisiones. (Citas.)"

Es, pues, cosa resuelta que ambas acciones no son incompatibles y que el uso de la una no excluye el ejercicio de la otra, cuando la obligación contraída no ha sido saldada en su totalidad, como ocurre en el presente caso, en que seis de los pagarés han vuelto a poder del vendedor condicional por no haber sido satisfechos.

■■ Alega el demandado apelante que la cesión del crédito hecha por la vendedora condicional a Rafael Matheu es nula y carece de efectividad legal, toda vez que el cesionario adquirió dicha obligación con la intención única y con el fin de entablar un pleito, siendo por lo tanto, contraria a lo dispuesto en una ley aprobada por nuestra Legislatura en 11 de marzo de 1909, cuyo título dice así: "Ley proveyendo para la organización de una comisión de abogados que examine e informe sobre las condiciones morales de los aspirantes al ejercicio de la abogacía ante los tribunales de la Isla de Puerto Rico, definiendo determinados deberes de los abogados, y para otros fines." La disposición que se considera violada es la siguiente:

"El abogado o cualquier otra persona, no comprará, directa ni indirectamente, ni estará en ninguna forma interesado en comprar un bono, pagaré, letra de cambio, cuenta o cualquier otra cosa litigiosa, con la intención y con el fin de entablar un pleito sobre ello; pero esta disposición no prohibirá que se reciban esos derechos en pago de la propiedad vendida, o por servicios realmente prestados, o por

deuda contraída con anterioridad . . . *disponiéndose, sin embargo,* que nada de lo contenido en esta sección se interpretará en el sentido de afectar o impedir la cesión de buena fe de cosas litigiosas.''

El demandante apelado sostiene que la parte que prohibe a una tercera persona que no sea abogado comprar un derecho de acción con la intención de entablar un pleito es nula e inconstitucional, porque no está cubierta por el título de la ley. Basa esta afirmación en el artículo 34 de nuestra Carta Orgánica que prohibe la aprobación de ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título. Cuando algún asunto que no esté expresado en el título fuese incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título. Se alega que el título de la referida ley, que hemos transcrito anteriormente, no cubre la compra de un derecho de acción por una tercera persona, y se cita el caso de *Spier* v. *Blake,* 120 Cal. 370, donde se dice lo siguiente:

''Una disposición de la constitución en este estado dispone: 'Todo proyecto de ley solamente cubrirá un asunto, el cual deberá ser expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título.' (Art. IV, Sec. 24.)

''Analicemos el título de esta ley en el crisol que proporciona la referida disposición de la constitución. La legislatura, al redactar este título, fué cándida en extremo. De su misma faz se desprende que el poder legislador ataca la sana política de esta disposición constitucional y descartándola abiertamente, declara que el fin de la ley fué la creación de una ley sobre elecciones primarias y 'otros fines.' Bajo el manto de 'otros fines' toda y cualquier clase de legislación podría ocultarse y prosperar en el cuerpo de la ley, y de esa manera burlarse de la referida sección de la constitución. En este estado, cuando estas palabras 'para otros fines' aparecen en el título de una ley de la legislatura estadual, no realizan ningún fin, y al leer el título nuestros ojos se cierran para ellas. Por lo tanto, tenemos ante nos, según revela el título, una ley que solamente trata de elecciones primarias generales, que dispone penalidades por la violación

de la ley en este respecto. Cualquier asunto que aparezca en el cuerpo de la ley no relacionado con elecciones primarias tiene que ser eliminado; la disposición constitucional que hemos copiado así lo declara. Pensando y midiendo por esta prueba la legislación que aparece en esta ley, muchas de sus disposiciones están fuera de lugar. Parece que la legislatura, al utilizar las palabras 'para otros fines' en el título, utilizó esas palabras deliberadamente y de buena fe las utilizó extensamente. La legislación que aparece artículo tras artículo de la ley no tiene justificación en su título a menos que sea bajo esas palabras de significación ilimitada: 'para otros fines.' "

La verdad es que a la disposición impugnada se le ha dado cabida en una ley que, a juzgar por su título y por todo su articulado, fué hecha exclusivamente para los abogados y aspirantes al ejercicio de la abogacía. La prohibición referida, al extenderse a cualquier persona, parece rebasar los límites de la ley. No conocemos legislación alguna en Puerto Rico, a excepción de la que venimos comentando, que prohiba la compra de un derecho de acción por cualquier persona con la intención y con el fin de entablar un pleito. Unicamente sabemos del artículo 1425 del Código Civil, edición 1930, que dice que cuando se venda un crédito litigioso el deudor tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se le hubiesen ocasionado y los intereses del precio desde el día en que éste fué satisfecho. Declara además este artículo que se tendrá por litigioso un crédito desde que se conteste la demanda relativa al mismo. En el presente caso no se trata de la compra de un crédito cuyo cobro se está reclamando ante un tribunal, sino de la cesión de un contrato que no había sido objeto de controversia judicial. La disposición prohibitiva que venimos comentando, habla, en el texto español, de la compra de una cosa litigiosa; en el texto inglés de *thing in action*. Disposiciones similares se encuentran en vigor en los estados de California y Nueva York, pero relacionadas exclusivamente con los abogados. La argumentación del demandante apelado al asegurar que el estatuto es nulo en tanto en cuanto prohibe la compra de un derecho de acción con intención de promover

un pleito por una tercera persona que no sea abogado no parece desacertada; pero no creemos necesario emitir un criterio definitivo sobre el particular, ya que a nuestro juicio el demandado no está en condiciones de impugnar una cesión que no le ha ocasionado perjuicio alguno. Sus derechos y obligaciones de acuerdo con el referido contrato permanecen intocados. La única alteración consiste en haber cambiado la persona del acreedor. La cesión no creó nuevas obligaciones para el referido deudor. El hecho de que ahora le deba a Matheu y no a la vendedora original no significa que exista una nueva obligación. Por el contrario, su deuda con Matheu tiene su origen exclusivamente en el contrato de venta condicional.

Se alega por último que la corte inferior cometió error al admitir en evidencia la escritura pública ratificando la cesión del contrato por la vendedora condicional a Matheu. Ya hemos resuelto que el deudor no puede impugnar una cesión que en nada le perjudica. La ratificación de esa cesión contenida en dicho documento tampoco puede perjudicarle.

*Debe confirmarse la sentencia apelada.*