EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Consejo de Titulares del Condominio Balcones de San Juan<br><br>Peticionario<br><br>v.<br><br>Mapfre Praico Insurance Company<br><br>Recurrido | 2022 TSPR 15<br><br>208 DPR \_\_\_\_ |
|---|---|

Número del Caso:  AC-2021-4

Fecha: 3 de febrero de 2022

Tribunal de Apelaciones:

    Panel X

Abogadas de la parte peticionaria:

    Lcda. Omayra Sepúlveda Vega
    Lcda. Camille I. Marrero Quiñones

Abogada de la parte recurrida:

    Lcda. Claudia Juan García

Materia: Derecho de Seguros – Obligaciones y Contratos: Retroactividad de la Ley Núm. 247-2018. Si existe impedimento para adjudicar a favor de un reclamante una causa de acción al amparo del Código Civil y otra al amparo del Art. 27.164 del Código de Seguros, 26 LPRA sec. 2716d, al no actuar de buena fe en la resolución de una reclamación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Balcones de San Juan<br><br>    Peticionario<br><br>        v.<br><br>Mapfre Praico Insurance Company<br><br>    Recurrido | AC-2021-0004 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 3 de febrero de 2022.

Desde hace décadas el Código de Seguros de Puerto Rico, *infra*, prohíbe a la industria que regula incurrir en prácticas desleales o engañosas. Sin embargo, no es hasta el paso de los huracanes Irma y María en septiembre de 2017 que la Asamblea Legislativa se expresó sobre la responsabilidad de los aseguradores por los daños causados por estas prácticas. Hasta entonces, los asegurados recurrían a acciones de carácter general para dirigir sus reclamaciones.

Motivada por el efecto devastador de estos fenómenos atmosféricos en la infraestructura y economía de Puerto Rico, así como, por las querellas presentadas ante la Oficina del Comisionado de Seguros relacionadas al manejo de las reclamaciones, la Asamblea Legislativa aprobó la Ley Núm. 247-2018 "a los fines de disponer remedios y protecciones

civiles adicionales a la ciudadanía en caso de incumplimiento por parte de la aseguradora a las disposiciones" del Código de Seguros. Mediante esta ley se creó entonces una causa de acción específica para reclamarle a las aseguradoras por los daños sufridos a consecuencia de diversas violaciones al Código de Seguros, entre ellas, los actos de mala fe o prácticas desleales en la resolución de una reclamación.

Hoy, por primera vez, tenemos la oportunidad de examinar (1) si la Ley Núm. 247-2018 se retrotrae a los eventos ocurridos antes de su aprobación, específicamente a los actos o prácticas de las aseguradoras en la atención de las reclamaciones relacionadas a los huracanes Irma y María, y (2) si existe impedimento para adjudicar a favor de un reclamante una causa de acción al amparo del Código Civil y otra al amparo del Art. 27.164 del Código de Seguros, *infra*, 26 LPRA sec. 2716d, al no actuar de buena fe en la resolución de una reclamación.

Tras examinar el historial legislativo de esta ley, concluimos que la clara intención legislativa es que la Ley Núm. 247-2018 aplique retroactivamente a los eventos que la motivan. Sin embargo, solo se podrá adjudicar una de las causas de acción por daños a favor del reclamante en aras de evitar la duplicidad de remedios.

Cabe señalar, que aunque el Art. 27.164 reconoce causas de acción en cuanto a diversas violaciones al Código de Seguros, nuestro examen se ciñe a las prácticas desleales en el ajuste de reclamaciones, y por lo tanto, no evaluamos la

concurrencia de acciones o la indemnización conjunta de otro tipo de violaciones.

## I

El 5 de septiembre de 2019, el Consejo de Titulares del Condominio Balcones de San Juan (peticionario) presentó una *Demanda* en contra de MAPFRE Praico Insurance Company (Mapfre o aseguradora). Alegó que contaba con una póliza expedida por Mapfre cuando el edificio sufrió daños por el paso del Huracán María y que la aseguradora rehusó cumplir con sus obligaciones bajo la póliza.[1] Por esta razón, presentó una primera causa de acción amparada en el Código Civil por incumplimiento del contrato de seguro, y daños y perjuicios derivados del alegado incumplimiento, así como, una segunda causa de acción por violación al Código de Seguros.[2]

El 13 de enero de 2020, Mapfre presentó una *Contestación a la Demanda* y el 1 de mayo de 2020 presentó una *Moción de Desestimación Parcial*. Arguyó que la causa de

---

[1] El Consejo de Titulares del Condominio Balcones de San Juan (peticionario) había contratado la póliza núm. 1600178000594 expedida por MAPFRE Praico Insurance Company (Mapfre o aseguradora) con efectividad para el periodo de 31 de enero de 2017 al 31 de enero de 2018. Mapfre estimó y ajustó los daños de la propiedad en $17,833.00. Posteriormente, el peticionario solicitó que esta suma le fuera pagada como adelanto; solicitud que fue rechazada por la aseguradora. *Contestación a la Demanda*, Apéndice, pág. 40.

[2] El peticionario solicitó $5,474,575.35 como compensación por los daños sufridos por la propiedad y alegadamente cubiertos por el contrato de seguro, así como, $547,457.53 en daños contractuales. En cuanto a las violaciones al Código de Seguros solicitó el pago de honorarios de abogado, costas y gastos. En una tercera causa de acción sostuvo la temeridad y mala fe de la aseguradora por lo que solicitó la imposición de honorarios de abogado, costas y gastos al amparo de las Reglas de Procedimiento Civil y el Código de Seguros.

Las partes reconocen que el peticionario notificó a Mapfre y a la Oficina del Comisionado de Seguros un *Notice prior to Initiating Civil Action pursuant to Article 27.164 of the Insurance Code of Puerto Rico Form*. Apéndice, págs. 28 y 41.

acción presentada al amparo del Código de Seguros se sostiene en las disposiciones incorporadas por la Ley Núm. 247-2018, la cual no tiene efecto retroactivo y no aplica a eventos ocurridos antes de su aprobación, tales como los fenómenos atmosféricos ocurridos en septiembre de 2017. Asimismo, sostuvo que de interpretarse que estas disposiciones eran retroactivas, no procedía la acumulación de la causa de acción contractual con la del Código de Seguros, pues conllevaría una duplicidad de remedios que el ordenamiento jurídico no permite. Por lo tanto, solicitó que la segunda causa de acción fuera desestimada con perjuicio y que el asegurado "tramit[e] su reclamación como una de incumplimiento contractual y el remedio debe limitarse, si alguno, a los daños previsibles bajo los términos del contrato de seguros".[3]

Por su parte, el Consejo de Titulares se opuso a la desestimación. Adujo que de la Exposición de Motivos de la Ley Núm. 247-2018 se desprendía la intención legislativa de que esta tuviera efecto retroactivo y que aplicara a los casos relacionados a los huracanes Irma y María. De determinarse que la ley no era retroactiva, sostuvo que no procedía la desestimación parcial, pues Mapfre continuaba violando esta disposición tras la promulgación de la ley.[4] Por otro lado, indicó que la doctrina de la concurrencia de acciones era inaplicable al caso de autos por no existir

---

[3] *Moción de desestimación parcial*, Apéndice, pág. 59.

[4] Apéndice, págs. 69-74.

peligro de duplicidad de remedios. Esto debido a que los hechos, deberes y remedios por los que se reclaman daños al amparo de ambas disposiciones eran distinguibles.

El 18 de junio de 2020, el Tribunal de Primera Instancia notificó una resolución en la que declaró no ha lugar la moción de desestimación presentada por Mapfre. Resolvió que las disposiciones de la Ley Núm. 247-2018 tienen carácter retroactivo en cuanto a las reclamaciones por los daños ocasionados por los huracanes Irma y María. Asimismo, concluyó que las causas de acción de esta ley pueden ser acumuladas con la causa de acción de incumplimiento de contrato.

Oportunamente, Mapfre presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones. Allí reiteró los mismos argumentos por los cuales entendía que procedía la desestimación de la causa de acción. El 9 de octubre de 2020, el Tribunal de Apelaciones resolvió que del texto de la ley no se desprendía de manera expresa que esta tuviera efecto retroactivo y que los hechos alegados en la demanda ocurrieron antes de su vigencia. Por lo tanto, revocó el dictamen recurrido y desestimó con perjuicio la causa de acción presentada en virtud de la Ley Núm. 247-2018. El 26 de octubre de 2020, el Consejo de Titulares presentó una moción de reconsideración la cual fue denegada mediante una resolución notificada el 9 de diciembre de 2020.

El 8 de enero de 2021, el Consejo de Titulares acudió ante nos mediante un recurso de apelación y señaló lo siguiente:

> Erró el Tribunal de Apelaciones al acoger los argumentos expuestos en la moción de desestimación de Mapfre, revocar al TPI y desestimar la reclamación que Balcones de San Juan instó según el Artículo 27.164 del Código de Seguros y las enmiendas de la Ley 247-2018.

El 26 de marzo de 2021, acogimos el recurso presentado como *certiorari* y expedimos. Asimismo, mediante Resolución de 15 de junio de 2021, notificada al día siguiente, acogimos la solicitud presentada por la parte peticionaria y autorizamos la continuación de los procedimientos en lo concerniente a la primera causa de acción de la demanda.[5] Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

## II

### Retroactividad

El Art. 3 del Código Civil, 31 LPRA ant. sec. 3, expresa como regla general de interpretación que "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario". Como hemos indicado repetidamente, el principio de irretroactividad responde al importante objetivo de mantener la certeza y la seguridad jurídica. *Díaz Ramos v. Matta Irizarry*, 198 DPR 916 (2017).

---

[5] El 20 de julio de 2021, denegamos la *Solicitud de Autorización para Comparecer como Amicus Curiae* presentada por la Asociación de Compañías de Seguros de Puerto Rico, Inc. (ACODESE).

Sin embargo, al interpretar una disposición de ley, los tribunales debemos considerar los fines perseguidos por la Asamblea Legislativa al aprobarla. De igual forma, nuestra determinación debe imprimirle efectividad a la intención legislativa y propiciar la realización del propósito que persigue. *Vargas v. Retiro*, 159 DPR 248 (2003). Por lo tanto, la retroactividad de una norma se justifica en casos excepcionales y por circunstancias establecidas concretamente por la Asamblea Legislativa, especialmente por razones de justicia, de interés público o cuando los propósitos de la ley así lo ameritan. *Asoc. Maestros v. Depto. Educación*, 171 DPR 640 (2007). Es decir, aunque la retroactividad es una excepción en nuestro ordenamiento, de surgir claramente la intención legislativa, ya sea de forma expresa o tácita, debe dársele tal efecto. *Díaz Ramos v. Matta Irizarry*, supra.

En vista de que los tribunales estamos llamados a descubrir y hacer cumplir la verdadera intención y deseo del Poder Legislativo, recurrimos a un análisis de diversos elementos, entre estos, la exposición de motivos que generalmente recoge el propósito que inspiró la creación de la ley, así como, a su historial legislativo. *Brau, Linares v. ELA*, 190 DPR 315, 339 (2014); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Veamos.

El paso de los huracanes Irma y María provocó que la Asamblea Legislativa examinara la respuesta de la industria de seguros a esta histórica catástrofe. Así, la Asamblea

Legislativa la catalogó como "una plagada de retrasos, mal

manejos y de reiteradas violaciones a las disposiciones de

nuestro Código de Seguros".[6] Asimismo, reconoció que:

> Muchos ciudadanos que fueron víctimas de esta catástrofe contaban con un seguro de propiedad, del cual esperaban recuperar los recursos para así poder iniciar el proceso de reconstrucción y recuperación de sus viviendas, y con éstas, su antiguo estilo de vida.
>
> …
>
> Es en tiempos como los que atraviesa Puerto Rico donde las aseguradoras juegan un papel importante en el proceso de recuperación. Por lo que resulta indispensable establecer parámetros que garanticen una respuesta apropiada y oportuna por parte de las aseguradoras, para beneficio de los asegurados. En muchos casos, de una respuesta apropiada y oportuna de las aseguradoras depende la seguridad de familias, que actualmente están en riesgo de no poder reparar su propiedad ante una nueva temporada de huracanes por la falta de indemnización adecuada por parte de la aseguradora. La recuperación económica de Puerto Rico depende también, en gran parte, de la respuesta de las aseguradoras.

Motivada por esta situación, la Ley Núm. 247-2018 fue

aprobada "a los fines de brindar herramientas y protecciones

adicionales en beneficio de los asegurados para garantizar

el fiel cumplimiento de los fines del Código de Seguros y

así agilizar el proceso de recuperación de Puerto Rico".[7]

De estas expresiones surge claramente que el propósito

principal de la Asamblea Legislativa fue promover la

recuperación económica de Puerto Rico (de sus hogares,

comercios e infraestructura en general) en consideración a

---

[6] *Exposición de Motivos* de la Ley Núm. *247-2018*, págs. 1-2.

[7] *Exposición de Motivos* de la Ley Núm. *247-2018*, pág. 2. Véase, *Informe Positivo* de la Comisión sobre Relaciones Federales, Políticas y Económicas sobre el Proyecto de la Cámara 1645 de 17 de septiembre de 2018, pág. 4.

las circunstancias excepcionales que se suscitaron por los huracanes Irma y María.[8] Esto, mediante el fiel cumplimiento de las disposiciones del Código de Seguros, particularmente del cumplimiento con aquellos deberes y responsabilidades a los que ya estaba sujeta la industria de seguros, y garantizando a los asegurados una oportunidad real de vindicar el derecho a una indemnización justa, rápida y equitativa, entre otros derechos reconocidos por nuestro ordenamiento, cuya transgresión hasta ese momento se atendía mediante las disposiciones generales de obligaciones y contratos.[9]

En vista de ello, debemos dar efecto retroactivo a la ley para cumplir con la intención legislativa y corregir la situación contemplada por el Poder Legislativo. Por lo tanto, concluimos que la Ley Núm. 247-2018 aplica retroactivamente a las reclamaciones relacionadas a los huracanes Irma y María, tales como las del caso de autos.[10] Disponer lo contrario derrotaría el propósito de esta ley. Así, hacemos expreso lo que la Asamblea Legislativa dispuso de forma tácita.

---

[8] Véase además, Op. Sec. Just. Núm. 2020-01 de 7 de marzo de 2019. ("[L]a Ley Núm. 247, *supra*, también comprende una excepción a la regla general de la aplicación prospectiva de las leyes. Y es que, el estatuto en cuestión versa sobre un asunto excepcional que el legislador deseó atender ante la lentitud y retraso de la resolución de reclamaciones a las aseguradoras en torno a los daños a la propiedad ocasionados por los huracanes Irma y María".)

[9] Véase Parte III, B de esta ponencia.

[10] La ACODESE solicitó en su comparecencia ante el Senado que se incluyera expresamente el efecto prospectivo de la Ley Núm. 247-2018. Sin embargo, el proyecto no sufrió enmiendas en cuanto a este aspecto. Asociación de Compañías de Seguros de Puerto Rico, *Re: Comentarios sobre el Proyecto de la Cámara 1645* de 7 de septiembre de 2018, pág. 9.

Corresponde entonces, examinar si existe impedimento para adjudicar a favor del reclamante las causas de acción al amparo del Código Civil, *supra*, y del Código de Seguros, *supra*.

## III

### Código de Seguros y prácticas desleales

**A. El contrato de seguro y el pacto implícito de buena fe**

El negocio de seguros está revestido de un alto interés público por su importancia, complejidad y efecto en la economía y la sociedad. Esto, pues el desenvolvimiento económico depende sustancialmente de la disponibilidad de los contratos de seguros y del buen funcionamiento de esta industria. *Maderas Tratadas v. Sun Alliance* et al., 185 DPR 880 (2012); *Jiménez López et al. v SIMED*, 180 DPR 1 (2010); *Echandi Otero v. Stewart Title*, 174 DPR 355 (2008). Véase además, R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, pág. 1. Por ello, la industria de seguros es reglamentada extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, y su Reglamento. Asimismo, el Código Civil le sirve de fuente de derecho supletorio.

Mediante el contrato de seguro, las personas y negocios pueden proteger sus bienes y obligaciones transfiriendo el impacto económico de los riesgos o pérdidas acordadas a cambio del pago de una prima. 26 LPRA sec. 102. Véase, *Maderas Tratadas v. Sun Alliance* et al., supra; *S.L.G. Ortiz-*

*Alvarado v. Great American*, 182 DPR 48 (2011); *Jiménez López et al. v. SIMED*, supra; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372 (2009). Esta relación contractual entre las aseguradoras y los asegurados se da en el marco de un deber de actuar de buena fe entre las partes. Por lo tanto, los contratantes están obligados "no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 33 LPRA ant. sec. 3375. Véase, *800 Ponce de León v. AIG*, 205 DPR 163 (2020). Así, hemos reconocido que el contrato de seguro está afecto por un pacto implícito de buena fe y el asegurador tiene la obligación de actuar con especial consideración por los intereses del asegurado.[11] *Quiñones López v. Manzano Pozas*, 141 DPR 139, 174 (1996); *Morales v. Automatic Vending Service, Inc.*, 103 DPR 281 (1975).

Como discutiremos más adelante, de ordinario, la aseguradora responde según pactado. Es decir, responde hasta los límites de responsabilidad estipulados en la póliza por las pérdidas cubiertas por esta. Sin embargo, a modo de excepción, la aseguradora puede ser responsable de pagar en exceso del límite de la cubierta cuando actúa en contra del pacto implícito de buena fe y antepone sus propios intereses a los del asegurado. *Quiñones López v. Manzano Pozas*, supra,

---

[11] Actualmente, la Carta de Derechos del Consumidor de Seguros agrupa los derechos del consumidor, entre ellos, el "[d]erecho a que el asegurador actúe de buena fe, de forma justa y equitativa al evaluar y resolver su reclamación". 26 LPRA sec. 118(i).

pág. 174. Históricamente, este tipo de actuación ha sido evidente en ciertos actos u omisiones conocidos como "prácticas desleales y fraudulentas".[12]

### B. Prácticas desleales

Desde hace décadas, el Capítulo 27 del Código de Seguros define, regula y prohíbe ciertas prácticas en el negocio de seguros que constituyen actos desleales o engañosos.[13] En particular, el Art. 27.161 del Código de Seguros, *supra*, detalla un listado de prácticas desleales en el ajuste de reclamaciones. Entre estas prácticas se encuentra "[n]o intentar de buena fe de llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad". *Id*. Además, este proceso de resolución de reclamaciones se debe ceñir a un periodo de noventa (90) días, salvo que exista justa causa para extenderlo.[14] Art. 27.162 del Código de Seguros, 26 LPRA sec. 2716b. De igual forma, se considera práctica desleal "obligar a los asegurados o reclamantes a entablar pleitos para recobrar

---

[12] S. Ashley, *Bad Faith Actions: Liability & Damages*, Sec. 2:11 (2da ed.).

[13] Se tomó como modelo las disposiciones sobre prácticas desleales en el ajuste de reclamaciones contenidas en el proyecto modelo adoptado por la Asociación Nacional de Comisionados de Seguros.

[14] La Carta Normativa Núm. 2012-145-D de 12 de julio de 2012 de la Oficina del Comisionado de Seguros aclara qué se considera justa causa para exceder el término de noventa (90) días para ajustar, investigar y resolver las "reclamaciones altamente complejas – Siniestros catastróficos, pérdidas cuantiosas o numerosas, o reclamaciones donde sea necesaria la contratación de peritos especializados, y en los que cerrar la reclamación sería en perjuicio del asegurado o reclamante. En estos casos, el expediente de la reclamación deberá documentarse periódicamente sobre el adelanto hacia la resolución de la misma, así como un estimado de tiempo necesario para resolver".

bajo los términos de una póliza, porque se le ha ofrecido al asegurado o reclamante una cantidad sustancialmente menor que la cantidad que podría ser recobrada finalmente en un litigio o porque se le ha negado incorrectamente la cubierta bajo los términos de la póliza". Art. 27.161(7) del Código de Seguros, 26 LPRA sec. 2716a.

Sin embargo, hasta recientemente y a diferencia de otras jurisdicciones estatales, el tratamiento de estas prácticas se limitaba principalmente a uno administrativo mediante el uso de sanciones y penalidades.[15] Véase, *Comisionado Seguros P.R. v. Integrand*, 173 DPR 900 (2008); *Comisionado de Seguros v. PRIA*, 168 DPR 659 (2006); *Comisionado v. Anglo Porto Rican*, 97 DPR 637 (1969). El Código de Seguros guardaba silencio sobre la responsabilidad por daños y perjuicios del asegurador por actuar con indiferencia o mala fe en la resolución de reclamaciones.[16] Por esta razón, para este tipo de situaciones, los asegurados han recurrido principalmente a los Arts. 1054 y 1060 del Código Civil por los daños sufridos y a la Regla 44(d) de las de Procedimiento Civil para la imposición de honorarios de abogado en caso de temeridad o frivolidad de la aseguradora.

Recientemente, en *800 Ponce de León v. AIG*, supra, tuvimos la oportunidad de recapitular sobre los remedios que

---

[15] 26 LPRA secs. 235(17) y 2735. Véase además, 8 *New Appleman on Insurance Law Library Edition* Sec. 90.03[2][c], págs. 90-43, 90-44 (Rel. 10A-12/2013).

[16] Comisionado de Seguros, Ponencia de 14 de septiembre de 2018 sobre el P. de la C. 1645, pág. 2.

-previo a la aprobación de la Ley Núm. 247-2018- los asegurados tenían disponibles por los daños sufridos por la alegada mala fe de la aseguradora durante el proceso de reclamación. Particularmente recalcamos que las aseguradoras están expuestas a las consecuencias dispuestas en el Código Civil por el incumplimiento de un contrato de incurrir en dolo, negligencia o morosidad en el cumplimiento de las obligaciones. Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018. A saber, el Art. 1060 del Código Civil, 31 LPRA ant. sec. 3024, dispone que el incumplimiento de la obligación por culpa o negligencia conlleva la obligación de indemnizar por los daños previstos o que pudieron preverse al suscribirse el contrato de seguro y que sean consecuencia directa y necesaria del incumplimiento. Por otro lado, en cuanto a los daños y perjuicios en caso de dolo, nos indica este mismo artículo que el deudor responderá de todos los daños que conocidamente se deriven de la falta de cumplimiento de la obligación.

Así, en *800 Ponce de León v. AIG*, supra, examinamos la alegación de que una aseguradora había actuado con dolo o mala fe durante el proceso de reclamación de una fianza de ejecución y pago (*Performance and Payment Bond*) en el contexto de un contrato de construcción. En ese caso reconocimos que si un acreedor prueba que la aseguradora incurrió en dolo o mala fe en el cumplimiento de su obligación, este tiene derecho a reclamar una indemnización por la totalidad de los daños que sufrió a causa de su

incumplimiento conforme al Art. 1060. A estos efectos, el dolo en el cumplimiento de las obligaciones se equipara con la mala fe, y consiste en la omisión consciente, intencionada y voluntaria del obligado de cumplir con su obligación con conocimiento de que se realiza un acto injusto. *800 Ponce de León v. AIG*, supra; *Colón v. Promo Motor Imports, Inc*, 144 DPR 659 (1997); *Canales v. Pan American*, 112 DPR 329 (1982). Detallamos que el dolo "es el actuar de mala fe, aunque en ello no haya intención premeditada de causar daño al acreedor.  No es preciso […] el ánimo de dañar, sino la voluntad de incumplir". *800 Ponce de León v. AIG*, supra, citando a J. Vélez Torres, *Derecho de obligaciones*, 2da ed., San Juan, Programa de Educación Jurídica Continua, 1997, pág. 274 (revisado por la Profa. Migdalia Fraticelli Torres).

Sin embargo, la experiencia en distintas jurisdicciones ha sido que los remedios tradicionales por incumplimiento de contrato en muchas ocasiones se quedan cortos en el contexto de los contratos de seguros.[17] Entre otras razones, el costo, esfuerzo y riesgos asociados a presentar una acción contra una aseguradora limitan la capacidad de los acreedores para reclamar ante los tribunales.[18] Aunque en otros tipos de

---

[17] En otras jurisdicciones la responsabilidad de las aseguradoras de pagar más allá de lo contratado fue expandiéndose a través de la defensa de reclamaciones contra el asegurado por terceros. Sin embargo, las reclamaciones de los asegurados contra la aseguradora eran generalmente limitadas a una compensación basada en la cubierta. S. Ashley, *Bad Faith Actions: Liability & Damages*, Sec. 2:11; 5 *New Appleman on Insurance Law Library Edition* Sec. 55.02[1], pág. 55-8, 55-9 (Rel. 17-9/2017).

[18] Exposición de motivos, Ley Núm. 247-2018, *supra*. ("Como es sabido, una de las principales barreras que enfrenta la ciudadanía son los altos costos de llevar sus reclamos ante los tribunales".)

contrato una parte puede recurrir al mercado tras el incumplimiento de la otra, en el caso de los contratos de seguros es distinto. Ya sufrida la pérdida, el asegurado se encuentra en un dilema económico, pues no conseguirá otra aseguradora que pague por una pérdida ya ocurrida. 5 *New Appleman on Insurance Law Library Edition* Sec. 55.02[1], pág. 55-8 (Rel. 17-9/2017). En vista de que los riesgos asegurados generalmente son aquellos que el asegurado no puede costear, la pérdida lo hace más vulnerable a tácticas opresivas para aceptar una compensación menor. *Id.* Todas estas razones han llevado a buscar mecanismos para proteger a los asegurados de la conducta abusiva o inescrupulosa de las aseguradoras con relación al pago de las reclamaciones.

En Puerto Rico, la Asamblea Legislativa ha seguido la corriente de distintas jurisdicciones, especialmente las disposiciones del Estado de Florida,[19] y creó una causa de acción específica a favor de los perjudicados contra las aseguradoras por violaciones al Código de Seguros mediante la incorporación del Art. 27.164. En lo pertinente al caso de autos, el Art. 27.164 del Código de Seguros, *supra*, actualmente dispone que "cualquier persona podrá incoar una acción civil contra una aseguradora de haber sufrido daños a consecuencia…" de las violaciones allí dispuestas, así como por la comisión de ciertos actos, entre los que se

---

[19] *Exposición de Motivos* de la Ley Núm. *247-2018*, pág. 2. ("Estados como Florida, Georgia, Luisiana y Texas actualmente proveen protecciones y herramientas superiores a las de nuestro Código de Seguros a favor de los asegurados".)

encuentran 'no intentar resolver de buena fe las reclamaciones cuando, bajo un análisis de la totalidad de las circunstancias, podría y debería haberlo hecho, así como cuando no actúa justa y honestamente hacia su asegurado y en consideración de sus intereses'". Esta acción tiene como finalidad resarcir el daño causado por la aseguradora al perjudicado.

La adjudicación adversa al asegurador en una acción al amparo del Art. 27.164 del Código de Seguros conlleva la concesión al demandante de "aquellos daños que son un resultado razonablemente previsible de una violación específica de [la ley] y puede incluir una adjudicación o juicio por un monto que exceda los límites de la póliza". Art. 27.164 del Código de Seguros, 26 LPRA sec. 2716d. De igual forma, el asegurador autorizado será responsable de los costos judiciales y honorarios razonables de abogado incurridos por el demandante. *Id*.

En vista de que el demandante ha tenido a su disposición una acción por incumplimiento de contrato conforme al Código Civil, y actualmente tiene otra acción provista por el Art. 27.164 del Código de Seguros, *supra*, examinemos si ambas acciones son acumulables, y si existe impedimento para adjudicar a favor de un reclamante ambas causas de acción.

**C. Concurrencia de acciones**

Las Reglas de Procedimiento Civil permiten la acumulación en una demanda de todas las reclamaciones independientes o alternativas que tenga un demandante contra

la parte adversa, estén o no relacionadas entre sí. Regla 14.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 14.1. Véase, *Márquez v. Barreto*, 143 DPR 137 (1997). La acumulación de acciones permite que estas reclamaciones puedan ser resueltas en un mismo proceso y se fomenta por responder a la economía y rapidez en la tramitación de los procedimientos judiciales y promover una completa adjudicación de las controversias entre las partes.[20]

Por otra parte, nuestro ordenamiento reconoce la teoría de la concurrencia de acciones o la elección de remedios.[21] Específicamente, esta faculta que el perjudicado -por una misma conducta o hecho y que tiene a su disposición una serie de causas de acción, cada cual con sus preceptos y principios propios- pueda escoger la que más le favorezca. *Márquez v. Torres Campos*, 111 DPR 854 (1982); *González v. Centex Const. Co., etc.*, 103 DPR 82 (1974). La oportunidad de escoger entre estas se conoce como el derecho de opción. L. Fernando Reglero Campos, *Conceptos Generales y Elementos de Delimitación en Tratado de Responsabilidad Civil*, Tomo I, 5

---

[20] Por ello, se permite acumular una acción en daños y perjuicios extracontractuales con una de cumplimiento específico de contrato. J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. II, págs. 623-624.

[21] En cuanto a la doctrina de elección de remedios, véase, 39 A.L.R.6th 155 ("[A]n essential element of an election of remedies is the availability of at least two remedies for the same wrong, or there must be at least two viable legal theories upon which recovery may be had. The election is limited to a choice by a party between inconsistent remedies or rights or theories of recovery or modes of procedure and relief, the assertion of one being necessarily repugnant to, or a repudiation of, the other.) Véase además, *Llambías v. Pagán*, 65 DPR 451 (1945); *Matheu v. Colón*, 49 DPR 376 (1936); *Rafols v. Sucn. Palens*, 40 DPR 632 (1930).

ed. Arazandi, 2014, págs. 181-189. Esto, pues la disponibilidad de varias causas no significa que pueda recobrarse bajo varias de ellas. *González v. Centex Const. Co., etc.*, supra.

El acreedor optará por la causa de acción que le favorezca tras analizar los elementos a probar, la extensión de la indemnización y los términos prescriptivos, entre otros factores.[22] El análisis por los tribunales de la aplicación de la teoría de la concurrencia de acciones en cada caso va a depender de las figuras jurídicas en juego. Para ello, se examinan las alegaciones contenidas en la demanda. Finalmente, la selección por el perjudicado de una de las acciones disponibles se deducirá de sus alegaciones y la prueba que presente. *Maderas Tratadas v. Sun Alliance* et al., supra, págs. 912-913; *Márquez v. Torres Campos*, supra; *González v. Centex Const. Co., etc.*, supra, pág. 86.

Nos hemos expresado repetidamente sobre la concurrencia de acciones *ex contractu* y *ex delictu*. La delimitación conceptual de ambas acciones entraña en ocasiones enormes dificultades. *Mejías v. López*, 51 DPR 21 (1937). Sin embargo, hemos delimitado que la primera atiende los daños derivados del incumplimiento de contrato y aplica en aquellas acciones que tienen como base el quebrantamiento o incumplimiento de una obligación contractual. *Prieto v. Maryland Casualty Co.*,

---

[22] En cuanto a cómo se manifiestan las diferencias de régimen jurídico entre los tipos de responsabilidad en aspectos sustantivos y procesales, véase L. Fernando Reglero Campos, *Conceptos Generales y Elementos de Delimitación* en *Tratado de Responsabilidad Civil*, Tomo I, 5 ed. Arazandi, 2014, P. 161.

98 DPR 594 (1970). Por otro lado, la segunda atiende los daños derivados de la culpa extracontractual que nace de las obligaciones y deberes impuestos por la naturaleza y por la ley, necesarias para la convivencia social. *Ramos v. Orientalist Rattan Furnt.*, Inc., 130 DPR 712 (1992). Sin embargo, ambas acciones pueden ser concurrentes si el hecho causante del daño es al mismo tiempo incumplimiento contractual y violación al deber general de no causar daño a otros.[23] *Ramos v. Orientalist Rattan Furnt.*, Inc., supra, pág. 728. Aunque el demandante acumule ambas acciones, este deberá escoger entre ellas dado que ambas modalidades responden a un principio común de derecho y a una misma finalidad reparadora. *Maderas Tratadas v. Sun Alliance et al.*, supra, págs. 910-911, citando a *Ramos v. Orientalist Rattan Furnt., Inc.*, supra, pág. 722. Al respecto, específicamente hemos indicado que:

> No procede la indemnización conjunta por ambos tipos de acción, puesto que ello conllevaría una duplicidad de remedios. El resarcimiento procederá únicamente por una sola de las reclamaciones. Corresponde, por lo tanto, al perjudicado, optar por una de las dos (2) vías alternas para obtener la reparación satisfactoria a sus daños. *Id*.

**D. Concurrencia entre el Art. 27.164 del Código de Seguros por prácticas desleales en el ajuste de reclamaciones y las acciones de carácter general**

---

[23] La concurrencia de acciones entre la responsabilidad contractual y la responsabilidad aquiliana puede darse cuando el hecho causante del daño es al mismo tiempo incumplimiento contractual y violación al deber general de no causar daño a otros, y tanto el acreedor contractual como el deudor contractual sea perjudicado e infractor en la obligación delictual. *Ramos v. Orientalist Rattan Furnt.*, Inc., 130 DPR 712, 725-728 (1992).

Mediante la Ley 247-2018, la Asamblea Legislativa ha reconocido expresamente la responsabilidad por daños del asegurador al no actuar de buena fe en la resolución de una reclamación. En cuanto a estos casos, la acción provista por el Art. 27.164 del Código de Seguros, *supra*, tiene una finalidad reparadora y busca proveer una herramienta para indemnizar al perjudicado por los daños ocasionados por las violaciones dispuestas en el Código de Seguros. Al hacerlo, la Ley Núm. 247-2018 también reconoce la existencia de otras causas de acción que han estado disponibles y que pueden aplicar, pero que son provistas por el Código Civil (ya sea en "materia de contratos o derecho extracontractual o daños y perjuicios").

El Art. 27.164(6) del Código Civil, *supra*, indica que:

> "**El recurso civil especificado en esta sección no sustituye cualquier otro recurso o causa de acción** prevista en virtud de cualquier otro estatuto o de conformidad con las leyes de Puerto Rico o las leyes federales aplicables. **Cualquier persona podrá reclamar bajo las disposiciones generales referente a materia de contratos o derecho extracontractual o daños y perjuicios, según contemplados en el Código Civil de Puerto Rico. Sin embargo, los tribunales o foros adjudicativos están impedidos de procesar y adjudicar ambos recursos o causas de acción.** Los daños recuperables de conformidad con esta sección incluirá aquellos daños que son un resultado razonablemente previsible de una violación específica de esta sección por la aseguradora autorizada y puede incluir una adjudicación o juicio por un monto que exceda los límites de la póliza. (Énfasis suplido).

En cuanto a estas acciones de carácter general, el Código de Seguros expresamente indica que no han quedado sustituidas por este. Es decir, la acción del Código de Seguros no es

exclusiva. No obstante, la Ley 247-2018, *supra*, aclara que los tribunales están impedidos de "procesar y adjudicar" ambos recursos o causas de acción. Examinemos a profundidad este precepto.

Como comentáramos previamente, el Art. 27.164(6) del Código de Seguros proviene en su mayoría de la Sec. 624.155 de los Estatutos de Florida. Reconocemos la fuerza persuasiva que tiene la interpretación de un estatuto tomado de otra jurisdicción. R. Elfrén Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 451. Así, en cuanto a este aspecto, el estatuto de Florida indica que "cualquier persona puede obtener una sentencia bajo el remedio de mala fe del *common law* o bajo este remedio estatutario, pero no tendrá derecho a una sentencia bajo ambos remedios".[24] Esta disposición ya ha sido analizada por la Corte Suprema de Florida, jurisdicción que ha desarrollado acciones en daños bajo el *common law* y otra estatutaria.[25] Esta última ha sido interpretada como otra acción disponible para el reclamante. Aunque puede ser acumulada con la del

---

[24] "Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies". Sec. 624.155(8), Florida Statutes.

[25] *Macola v. Government Employees Ins. Co.*, 953 So.2d 451, 455-456 (2006). ("However, this common law cause of action arose only in the third-party context, and did not authorize common law first-party actions by an insured against its own insurer for failing to act in good faith when settling a claim brought by the insured against its insurer[…] If an insurer acted in bad faith in settling a claim filed by its insured, the only common law action available to the insured was a breach of contract action against the insurer in which damages were limited to those contemplated by the parties in the insurance policy".)

*common law*, está limitada por la doctrina de duplicidad de remedios.  Por lo tanto, al expresar que el reclamante no tiene derecho a una sentencia bajo ambas acciones, el estatuto asegura que este no obtenga doble compensación de sentencias separadas.[26] Esta interpretación es cónsona con nuestro ordenamiento en cuanto a que las causas de acción, alternativas o independientes, son acumulables.  Sin embargo, no se autoriza la duplicidad de remedios.  Por lo tanto, el perjudicado debe seleccionar entre las acciones disponibles; selección que se deduce de las alegaciones y de la prueba que este presente.

Sin embargo, esta disposición de la jurisdicción de Florida fue adoptada con ciertos cambios.  Así, el texto finalmente aprobado indica que: "Cualquier persona podrá reclamar bajo las disposiciones generales referente a materia de contratos o derecho extracontractual o daños y perjuicios, según contemplados en el Código Civil de Puerto Rico.  Sin embargo, los tribunales o foros adjudicativos están impedidos de procesar y adjudicar ambos recursos o causas de acción".

Recalcamos que cuando el texto de la ley es claro y libre de ambigüedad, no debe ser sustituido bajo el pretexto de cumplir con los propósitos legislativos.  Sin embargo, como hemos reiterado, las disposiciones de una ley no deben

---

[26]*Macola v. Government Employees Ins. Co.*, supra, pág. 457. ("Rather than limit the type of action available to a claimant, the statute merely ensures that a claimant does not obtain a double recovery by receiving separate judgments when proceeding with two different remedies").

ser interpretadas aisladamente, sino que deben serlo tomando en consideración todo su contexto. El análisis hermenéutico debe evitar la aplicación literal de la ley si esto tiene consecuencias absurdas. Es decir, la interpretación debe ser razonable y consecuente con el propósito legislativo. *Brau, Linares v. ELA*, supra, pág. 339.

Del examen de la ley en concordancia con su propósito y nuestro ordenamiento, concluimos que la limitación que contempla la ley es en cuanto al remedio. Esto, pues tanto las acciones disponibles bajo el Código Civil como al amparo del Código de Seguros por prácticas desleales en el ajuste de reclamaciones responden a la misma finalidad reparadora. En consideración a los preceptos y principios propios de cada causa de acción, es el demandante quien opta entre ellas según el beneficio que le provea. No surge del texto de la ley ni del historial legislativo que la intención de la Asamblea Legislativa fuera apartarse del tratamiento que da nuestro ordenamiento a las acciones concurrentes ni del tratamiento que se le daba en Florida, jurisdicción a la que recurrió para esta disposición.

Por otro lado, la Asamblea Legislativa no ha dado carta en blanco para impactar los acuerdos entre las partes ni ha aumentado la responsabilidad del asegurador, pues el reclamante siempre debe probar los elementos del daño. Tampoco ha prejuzgado el comportamiento de las aseguradoras en casos particulares. Por el contrario, la Asamblea Legislativa se ha limitado a reconocer unos mecanismos

para permitir que los perjudicados vindiquen sus derechos y promover que las aseguradoras cumplan con las disposiciones de la ley.

Por lo tanto, resolvemos que, aunque el asegurado presente ambas causas de acción, en aras de evitar la duplicidad de remedios, el tribunal solo podrá adjudicar a su favor una de ellas, a saber, la causa de acción seleccionada por el asegurado. Tal selección deberá desprenderse, conjuntamente, de las alegaciones y la prueba presentada por este. Conforme a lo anterior, revocamos la sentencia recurrida y devolvemos el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con esta opinión.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Balcones de San Juan<br><br>Peticionario<br><br>v.<br><br>Mapfre Praico Insurance Company<br><br>Recurrido | AC-2021-0004 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 3 de febrero de 2022.

Por los fundamentos antes expresados, revocamos la sentencia recurrida y devolvemos el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con esta opinión.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo